` [S. F. No. 1512.   In Bank.—August 13, 1901.]

## CITY AND COUNTY OF SAN FRANCISCO, Respondent, v. JOHN CENTER et al., Defendants.   EUGENE LE ROY and GEORGES LE ROY, Appellants.

VAN NESS ORDINANCE — EXCEPTION — STREETS DELINEATED ON VAN NESS MAP. — All lands lying within the limits of public streets, as delineated on the Van Ness map, were excepted from any grant made or authorized by the terms of the Van Ness ordinance.

ID. — LANDS IN BED OF MISSION CREEK — INCORRECT DELINEATION OF CREEK — SUBSEQUENT SURVEYS AND MAPS. — Although the bed of Mission Creek was incorrectly delineated on the Van Ness map, and was afterwards correctly delineated in subsequent surveys and maps made by municipal authority, which were admitted in evidence, yet, where it appears that the lands in controversy, which included part of what was the former bed of Mission Creek, were in fact included within the limits of Channel and other connecting streets, as delineated on the Van Ness map, it is sufficiently established that they were within the reservations of the Van Ness ordinance.

ID. — ANGULAR SPACES MADE BY CURVED STREET AND CONNECTING STREETS. — Angular spaces made by the junction of straight connecting streets with the curved outline of Channel Street, which were not laid off as lots or blocks, and which were necessary for proper access to the blocks delineated on the map, were part of Channel Street, and of the streets connecting therewith.

ID. — RES ADJUDICATA — DECREE QUIETING TITLE AGAINST CITY — MODIFICATION UPON APPEAL — CONSTRUCTION. — Where a former decree, quieting the title of the appellants, as against the city and county of San Francisco, was modified upon appeal, by declaring " that nothing therein shall be deemed to impair in any respect the rights reserved in the Van Ness ordinance to the city of San Francisco, or to its successor, the city and county of San Francisco, over lands that *had then been* occupied or *set apart* for streets, squares, and public buildings of the city," such modification is to be construed as referring either to the date of the final confirmation of the Van Ness ordinance, and final approval of the Van Ness map, or to the date of the entry of the Van Ness map, in which the streets, etc., *were set apart*, and as reserving to the city all of the streets delineated upon that map.

ID. — SUBSEQUENT CHANGES IN OFFICIAL MAP OF CITY — ABANDONMENT OF PARTS OF FORMER STREETS — TITLE OF CITY. — Where the fee to the streets in controversy was wholly in the city from the date of its organization, the fact that subsequent changes were made in the

CXXXIII. Cal.—43

official maps of the city, which worked an abandonment of parts of the streets delineated on the Van Ness map, such abandonment could not inure to the benefit of the appellants, who had no title to the fee, subject to the public right of way, and no prescriptive right as against the city; but the whole title remained in the city.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Charles W. Slack, Judge.

The facts are stated in the opinion of the court.

Platt & Bayne, and E. S. Pillsbury, for Appellants.

James L. Gallagher, Gaillard Stoney, Franklin K. Lane, and George W. Lane, for Respondent.

BEATTY, C. J.—This is a suit in ejectment, to recover a strip of land extending from Ninth to Eighteenth streets, in the city of San Francisco, covering a part of what was formerly the bed of Mission Creek. Judgment was entered in favor of the city, against numerous defendants holding or claiming different parcels of the tract, but this appeal is prosecuted by only two of them,—Eugene and Georges Le Roy,—from that part of the judgment awarding restitution of a portion of the demanded premises claimed by them.

The Le Roy tract is of considerable size, and is bounded on the southeast by Mission Creek. They claim to the center of the creek, and the city claims the whole bed of the creek, from bank to bank, the land in controversy being the northwesterly half of the creek bed, extending from Eleventh Street to a short distance south of Alameda Street. The entire tract is covered by the patent to the city for its pueblo lands, and is claimed by defendants, as successors in interest to various parties, founding their title upon the Van Ness ordinance and grants made in pursuance thereof. The city claims that the parcel in controversy could not have passed by any grant made by or in pursuance of that ordinance, because it is wholly within the boundaries of certain public streets as laid out and delineated upon the Van Ness map, and was thereby excepted from any grant made or authorized by the ordinance. A decision of this question in favor of the city is of vital consequence; for unless the disputed parcel is within the

boundaries of streets or squares delineated on the Van Ness map, it is clear, upon the whole case, that the Le Roys have the title, and one of the principal contentions of their counsel is, that the superior court erred in finding upon this point in favor of the plaintiff. In this connection, much of the argument is devoted to the question as to the burden of proof, but we do not consider it necessary to decide that question, because upon any theory as to the burden of proof the claim of the city is satisfactorily established. It seems that after the making and recording of the Van Ness map delineating the reserved streets and squares, other maps were made, under the authority of the municipality, changing the lines of some of the streets, changing the names of others, and more exactly indicating the relative positions of the different streets and their intersections to the banks of Mission Creek. The complaint in this action describes the demanded premises by reference to these more recent maps. On the trial, they, as well as the Van Ness map, were introduced in evidence, together with the testimony of a number of surveyors and others. Upon this evidence the court found in favor of the plaintiff, that the parcel in controversy was a part of Channel and connecting streets; and even if there were a preponderance of evidence against this finding, we could not set it aside. But the evidence very clearly sustains the finding. It is shown that the south side of Channel Street is the same on all the maps, and although it appears that the bed of Mission Creek, where it intersects Alameda Street, was incorrectly delineated on the Van Ness map,—being placed east of, instead of in, Columbia Street,—still, making every allowance for this mistake, and with the necessary correction, the disputed parcel is nevertheless clearly within those lines of the Van Ness map which, as we view it, marked the reservation. The real contention between the parties, indeed, is with reference to the meaning of the lines marked on the Van Ness map. Channel Street, as delineated on that map, is for some distance bounded on the north and south by straight and parallel lines, but east of York Street it begins to curve to the south, and this curve continues past Florida, Columbia, and Alabama streets, until Channel Street becomes a north and south street, running parallel to the streets which in its initial course it crosses at right angles. The northwest side of the street (the outer line

of the curve) is continuous, but the inner line of the street is not made parallel to the outer line. Instead, the blocks within the curve retain their rectangular form, being simply shortened at their northern ends. The streets south of Channel Street are laid down in this order: Alameda, Eldorado, Center. From York Street east they are named Florida, Columbia, Alabama. In order to preserve the full width of Channel Street at the curve without destroying the rectangular form of the blocks, the block between Channel and Alameda, York, and Florida streets is shortened a little at the north end; that between Channel and Alameda, Florida, and Columbia is reduced to about half the length of a full block. Between Channel and Alameda, Columbia, and Alabama, no block appears, and none but a minute triangle could have been laid out without reducing the width of Channel Street. The same is true of the space between Channel, Alabama, and Eldorado streets. The result of this method of survey was to leave on the southeast side of Channel Street, at the curve, a series of angular spaces, which counsel for appellants call "jags," and which they insist were no part of the street, and were not reserved. But we think they were part of the streets—including Channel Street—which open into them. Certainly, they are not laid off as lots or blocks. All of these, as laid off on the map,—whether of rectangular or of less definite form,—are completely inclosed by heavy black lines, and each has its separate number. The streets, on the contrary, are open, in every direction, forming continuous and uninterrupted avenues in every direction between the blocks, and just as they open into each other they open into these triangular spaces called "jags." Upon these grounds alone we should feel no hesitation in holding that the whole of these open spaces is part of the connecting streets, but it is apparent that there was good reason for reserving them to the use of the public. At the places where they appear, Mission Creek filled a large portion of the streets, and Mission Creek at that time was in use as a navigable stream. Without these wider spaces there would have been no access to some of these blocks on one or more sides, and even where that consideration did not weigh, there was nothing to gain by projecting the adjacent and intersecting streets through these open spaces, for nothing would have been left but one or two minute triangular blocks.

PART OF

# VAN NESS MAP.

NOTE. — The Le Roy tract includes most of blocks 17 and 46 and the space between those blocks and the middle of Mission Creek. Wood Street, on the Van Ness map, has been renamed Eleventh Street.

The case of *Amador County* v. *Gilbert*, recently decided by this court, and reported *ante*, p. 51, is an authority directly in point for our construction of this feature of the Van Ness map, which is also sustained by the cases cited in respondent's brief. (*Hanson* v. *Eastman*, 21 Minn. 509; *Sanborn* v. *Chicago*

*etc. Ry. Co.*, 16 Wis. 19; *Indianapolis* v. *Kingsbury*, 101 Ind. 200.[1])

That the parcel of land in controversy was reserved by the Van Ness map we think is very clear, but a more difficult question remains behind. The Le Roys, in the year 1883, commenced a suit in equity, in the United States circuit court, against the city and county of San Francisco, to quiet their title to the tract of land claimed by them, and in that action obtained a decree quieting their title to the entire tract, including the strip of land between the center and the northwest bank of Mission Creek,—the parcel here in controversy. The case, however, was taken by appeal to the supreme court of the United States, where the judgment, though affirmed in most respects, was directed to be so modified as to reserve to the city some or all of the rights reserved by the Van Ness ordinance over streets, squares, etc. The Le Roys plead that decree, so modified, as one of their defenses to this action, and the question thus presented is, What was the extent of the modification? If it had the effect of reserving to the city the streets and squares delineated on the Van Ness map, the defense fails, for the reasons above stated; but if it reserved only such lands as had been occupied or set apart for streets, squares, or public buildings prior to the confirmation of the Van Ness ordinance and map, the defense is fully sustained, for it affirmatively appears from the uncontradicted evidence in the record that prior to the confirmation of the Van Ness ordinance no part of the parcel in controversy had ever been occupied or set apart for any such purpose.

The order of the supreme court of the United States directing the modification of the decree was as follows: "The decree should therefore be modified by adding the declaration that nothing therein shall be deemed to impair in any respect the rights reserved in the Van Ness ordinance to the city of San Francisco, or to its successor, the city and county of San Francisco, over lands that had then been occupied or set apart for streets, squares, and public buildings of the city, and as thus modified be affirmed; and it is so ordered." (*San Francisco* v. *Le Roy*, 138 U. S. 672.)

The meaning and effect of this modification of the decree depends altogether upon the force of the words, "had then been

[1] 51 Am. Rep. 749.

occupied," in the clause, "over lands that had then been occupied or set apart," etc.   If the time referred to by the word "then" is the passage of the ordinance, and if the lands to come within the reservation must have been occupied or set apart at that time, then, as above shown, the parcel here in controversy was not reserved, and the city is barred from any recovery by the decree quieting the Le Roys' title.   If, on the contrary, the date referred to is the confirmation of the Van Ness ordinance by the legislature, or the entry of the decree in favor of the Le Roys, or if we may do so much violence to the text as to make it read, "were then occupied," etc., instead of, "had then been occupied," then this parcel was reserved.

It must be granted that the reading first above suggested is the more natural one, and more in consonance with grammatical rule, but there are very weighty reasons for rejecting it in favor of the other construction.   The grant made by the Van Ness ordinance was a pure bounty.   The city had a perfect right to except from the grant not only such lands as it had then occupied and set apart for public purposes, but as much more as, in view of the future growth and extension of the city, it might deem necessary for streets and public squares.   The Van Ness map was made for the purpose of indicating the location and extent of such reservations.   When the legislature confirmed the ordinance, they, at the same time and by the same act, confirmed the map, — the grant and the reservation. When, therefore, the supreme court determined upon a modification of the decree in favor of the Le Roys, there was every reason to make the modification cover the reservations marked on the Van Ness map, as well as those lands occupied and set apart prior to the making and recording of that map.   The city had as good a right to one class of lands as to the other, and as much need of them, while the Le Roys had as little title to one as to the other.   It is true, the court may by inadvertence have failed to make such an order as logically followed from the grounds of their decision, but to acquit the court of that inconsistency, and preserve the rights of the city, I think it admissible to construe the word "then" as referring to the final confirmation of the ordinance by the act of 1858, at which time the Van Ness map had been approved by the local authorities, and in that sense had set apart for public purposes the streets as marked.

Another construction which would bring the streets de-

lineated on the Van Ness map within the modification of the decree would be to hold that the word " then " referred to the date of its entry; and still another admissible construction would be to read the sentence, "were then set apart," instead of, "had then been set apart." Neither of those constructions would do more violence to the text than is often done in making a clause of a statute or of a contract conform to the evident intention of the legislature or of the parties, as gathered from the context and a comprehensive view of the circumstances. We hold that the decree in *Le Roy* v. *San Francisco*, 138 U. S. 672, as modified, reserved to the city all its rights in the streets and squares delineated on the Van Ness map.

Appellants next contend that the adoption and publication, by the city, of the engineer's map, and subsequently of the Humphrey map, as the official maps of the city, upon which the location and direction of the streets adjacent to Mission Creek were greatly altered, was an abandonment of all those streets and parts of streets marked on the Van Ness map which were not included in the latest official maps. This proposition seems to be fully sustained by the decisions of this court in *Brook* v. *Horton*, 68 Cal. 554, and *San Francisco* v. *Burr*, 108 Cal. 460. And *Brook* v. *Horton*, 68 Cal. 554, also seems to hold that a valid title by prescription may be founded upon an adverse possession of a part of a street thus abandoned. But it does not follow that the city, in the absence of an adverse possession sufficient to give a prescriptive right, would lose the title to the land, or that it would pass to the owners of the adjoining premises, unless they had been owners of the fee subject to the public right of way. Here, the defendants never had any title to any part of Channel Street, as marked on the Van Ness map. The fee was in the city from the date of its organization, and the abandonment of the street worked no change in the title.

The judgment of the superior court is affirmed.

Temple, J., Van Dyke, J., and Henshaw, J., concurred.

McFarland, J., dissented.

Harrison, J., deeming himself disqualified, took no part in the decision of this case.