[Sac. No. 1955. Department One.—January 15, 1912.]

JOSEPH GORDON, Respondent, v. GEORGE CADWALA-DER et al., Defendants and Appellants; SOUTHERN PACIFIC RAILROAD COMPANY, Intervener and Respondent.

DEED—RULE IN SHELLEY'S CASE—REMAINDER TO HEIRS OR HEIRS OF BODY.—The so-called rule in Shelley's case is that where a will devises or a deed grants land to A for life, and the remainder after his death to his heirs, or to the heirs of his body, using these words or words having the same legal effect, the effect is to vest in A a fee simple absolute if the remainder is to his "heirs," or a qualified fee, if it is to the "heirs of his body." The heirs of A in such a case take no estate or interest in the land during the life of A, and he may dispose of it as if the deed or will contained no words purporting to transfer to him less than a fee. As it is usually stated, the words "heirs" or "heirs of his body," or whatever other words of like effect are used, are words of limitation and not of purchase.

ID.—FOUNDATION OF RULE IN SHELLEY'S CASE.—The fundamental reason for the rule in Shelley's case is that at common law it was considered that the words "and to his heirs" or "and to the heirs of his body," following a grant purporting to be of an estate for life, necessarily implied that the heirs mentioned should take by inheritance from the life tenant, and not directly by the deed, or directly from the grantor, and as this could not be so unless the life tenant had an estate of inheritance to pass at his death, it followed as a necessary consequence that the deed must be understood to pass the fee to him as well as the life estate.

ID.—RULE ONE OF POSITIVE LAW—INTENT—MEANING OF WORD "HEIRS." In the phrases quoted, when the rule in Shelley's case applies, the word "heirs" is used in the broad sense, to signify the persons who take the estate by succession from generation to generation, forever, or as it is sometimes expressed, the whole inheritable blood of the life tenant, so that such life tenant, and not those who may be his heirs at his death, is the original stock of inheritance. It is a rule of positive law, and defeats even the declared contrary intent if, notwithstanding such declaration, it appears that the word "heirs" was used in this technical sense. But the primary question is always the one whether or not it was so used.

ID.—INTERPRETATION OF GRANT — INTENTION TO CREATE LIFE ESTATE WITH REMAINDER OVER.—If the deed contains words which modify or qualify these phrases to such an extent that a reasonable interpretation of the grant is that the grantor did not use the words to describe the whole line of succession from the life tenant, or his whole inheritable blood, but, on the contrary, intended thereby to point out and designate the particular persons who should take the estate upon the death of the life tenant, and to describe them as the persons then to take the estate direct from the grantor, and by virtue of the grant, constituting of them a new root of inheritance, the implication as to the meaning of said phrases, upon which the rule is founded, would not exist, and the rule would not govern the grant.

ID.—CONSTRUCTION OF DEED—RULE IN SHELLEY'S CASE INAPPLICABLE.— The deed in question, which was executed at a time when the rule in Shelley's case was in force in this state, granted unto the party of the second part "for and during the term of his natural life, and after his death then to descend to his heirs and assigns forever," certain described lands, and recited that "the said land being conveyed to the said . . . for and during his natural life, for the final use, benefit, and behoof of the children, or other lawful heirs of his body, who may survive him." The *habendum* clause was "to have and to hold . . . unto the said party of the second part, his heirs and assigns forever," and a further clause contained a warranty to "the said party of the second part, his heirs and assigns." The final clause stated that the words "for and during the term of

his natural life, and after his death then to descend to," were inter-lined, and the words "and to" were erased, before the execution of the deed. *Held,* that the deed did not come within the rule in Shelley's case, and that the words used manifested the intent that the grant to the immediate grantee was for life only, and that the remainder was to go to the surviving children or grandchildren, directly by the deed and not by inheritance, and that they, and not such grantee, were to constitute the new stock or root of inheritance of the estate.

ID.—MEANING OF WORDS "DESCEND TO."—The words "descend to," as used in such deed, should be construed as words of transfer, and the passage in which they occur should be read as if it declared that after the death of the immediate grantee the land should "go to" or "vest in" his heirs, the latter words being used as a description of the persons to whom the remainder is transferred, and not to indicate a taking by the law of inheritance.

APPEAL from a judgment of the Superior Court of Yolo County. Nicholas A. Hawkins, Judge.

The facts are stated in the opinion of the court.

George Clark, W. A. Anderson, and Black & Clark, for Appellants.

Hudson Grant, for Plaintiff and Respondent.

William Singer, Jr., Frank Thunen, and D. V. Cowden, for Intervener and Respondent.

SHAW, J.—The defendants' appeal from the judgment was taken within sixty days after its rendition. The evidence is brought up in the record.

The plaintiff sued to quiet title to land. All the parties claim under a certain deed conveying the land, executed by William Gordon to John Gordon on June 3, 1872. The rule in Shelley's case was in force in this state until January 1, 1873, when it was abolished by section 779 of the Civil Code. The said deed was therefore subject to that rule and the sole question is whether or not it comes within the rule. The rule is that where a will devises or a deed grants land to A for life and the remainder after his death to his heirs, or to the heirs of his body, using these words or words having the same legal effect, the effect is to vest in A a fee simple absolute if

the remainder is to his "heirs," or a qualified fee, if it is to the "heirs of his body." The heirs of A in such a case take no estate or interest in the land during the life of A and he may dispose of it as if the deed or will contained no words purporting to transfer to him less than a fee. As it is usually stated, the words "heirs" or "heirs of his body," or whatever other words of like effect are used, "are words of limitation and not of purchase." The plaintiff claims one-sixth of the land as an heir of John Gordon, upon the theory that said deed vested the fee in John. Upon the same theory the intervener claims a part of the land under a conveyance from John in his lifetime. The defendants claim the plaintiff's interest under and by virtue of an execution sale and sheriff's deed upon a judgment against the plaintiff, the sale and deed having been made during the lifetime of John Gordon and upon the theory that said deed to John vested in John a life estate only and vested in Joseph at its date, as one of his six children, a present one-sixth interest in the remainder in the land in fee after the death of John. It will be observed, therefore, that if the rule in Shelley's case controls the effect of the deed of William Gordon to John, thereby vesting the fee in John there would be no interest vested in Joseph at the time of the sale on execution against him and the defendants obtained none thereby.

It is not necessary to state the Gordon deed in full. It names William Gordon as grantor and John Gordon as grantee. The clauses which it is necessary to consider are the granting clause, a recital following the description of land, the *habendum*, the warranty, and the final clause following the attestation clause and explaining an interlineation and erasure. These are as follows:

Granting clause—"Does grant (etc.) unto the said party of the second part for and during the term of his natural life, and after his death then to descend to his heirs and assigns forever."

Recital—"The said land being conveyed to the said John Gordon for and during his natural life, for the final use, benefit and behoof of the children or other lawful heirs of his body, who may survive him."

Habendum—"To have and to hold . . . unto the said party of the second part, his heirs and assigns forever."

Warranty—To . . . "the said party of the second part, his heirs and assigns."

Final clause—"The words 'for and during the term of his natural life, and after his death then to descend to,' interlined, and the words 'and to,' erased, before the execution of these presents."

The final clause evidently refers to changes in the granting clause. It shows that the granting clause was first written thus: "unto the said party of the second part *and to* his heirs and assigns forever," making an unequivocal grant of the fee, and that when this was perceived and the repugnancy between it and the subsequent recital was noticed, the words "and to" were erased and the words referring to a life estate substituted therefor.

The fundamental reason for the rule in Shelley's case is that at common law it was considered that the words "and to his heirs," or "and to the heirs of his body," following a grant purporting to be of an estate for life, necessarily implied that the heirs mentioned should take by inheritance from the life tenant, and not directly by the deed, or directly from the grantor, and as this could not be so unless the life tenant had an estate of inheritance to pass at his death, it followed as a necessary conclusion that the deed must be understood to pass the fee to him as well as the life estate. In the phrases quoted, when the rule in Shelley's case applies, the word "heirs" is used in the broad sense, to signify the persons who take the estate by succession from generation to generation, forever, or as it is sometimes expressed, the whole inheritable blood of the life tenant, so that such life tenant, and not those who may be his heirs at his death, is the original stock of inheritance. It is a rule of postive law, and defeats even the declared contrary intent if, notwithstanding such declaration, it appears that the word "heirs" was used in this technical sense. (*Norris* v. *Hensley,* 27 Cal. 446.) But the primary question is always the one whether or not it was so used.

The rule being founded upon these reasons, it is plain that if the deed contains words which modify or qualify these phrases to such an extent that a reasonable interpretation of the grant is that the grantor did not use the words to describe the whole line of succession from the life tenant, or his whole

inheritable blood, but, on the contrary, intended thereby to point out and designate the particular persons who should take the estate upon the death of the life tenant and to describe them as the persons then to take the estate direct from the grantor and by virtue of the grant, constituting of them a new root of inheritance, the implication as to the meaning of said phrases, upon which the rule is founded, would not exist and the rule would not govern the grant. This distinction is thoroughly established and it is recognized by all the authorities. (2 Washburn on Real Property, secs. 1614, 1615, 1616; 1 Jones on Real Property, sec. 617; 2 Devlin on Real Property, secs. 846a to 846e; 2 Pingree on Real Property, sec. 1019; note to *Carpenter* v. *Van Olinder,* 11 Am. St. Rep. 102; *Norris* v. *Hensley,* 27 Cal. 446.) Many illustrations could be given. A few will serve to illustrate the application and effect of the distinction. The words, "and upon his demise to the heirs of *him surviving share and share alike,*" show that the word "heirs" was used to describe particular persons and not the line of succession and the rule was held inapplicable. (*Burges* v. *Thompson,* 13 R. I. 714.) A deed to a husband and wife as joint tenants, for their lives, and to the survivor during the life of the survivor, with remainder to the issue and heirs of their two bodies *and the heirs of such issue forever,* creates only estates for life in the husband and wife and gives to their issue, upon their death, the fee. The addition of the words, "and the heirs of such issue forever," was held sufficient to make the distinction and take the deed out of the rule. (*Montgomery* v. *Sturdivant,* 41 Cal. 297.) So, also, of the words: "And *at her death to be equally divided among her children* or legal heirs," (*Hall* v. *Gradwohl,* 113 Md. 297, [29 L. R. A. (N. S.) 954, 77 Atl. 483]); "To *the children* and lawful heirs" (*Reilly* v. *Bristow,* 105 Md. 326, [66 Atl. 262]); "Shall be inherited by the *surviving* issue of my said niece, *share and share alike,*" (*Hill* v. *Giles,* 201 Pa. St. 215, [50 Atl. 758]); "And at her death to the issue of her body *then living,*" (*Gladsden* v. *Desportes,* 39 S. C. 131, [17 S. E. 706]); "Heirs at law and *next of kin,*" (*Martling* v. *Martling,* 55 N. J. Eq. 790, [39 Atl. 203]); "To the heirs of his body begotten if there be any such heirs *him surviving,*" (*Granger* v. *Granger,* 147 Ind. 95, [36 L. R. A. 186, 190, 44 N. E. 189, 46 N. E. 80]); "Heirs of his body *living at the*

*time of his death,"* (*Moore* v. *Parker,* 34 N. C. 127) ; "To the heirs of her body *begotten,"* (*Ault* v. *Hillyard,* 138 Iowa, 242, [115 N. W. 1030]). In these decisions it was conceded that the word "issue," alone, would be considered as the equivalent of "heirs," and would not take the case out of the rule. The words we have italicized were those which were held to have that effect.

The deed here involved contains modifying words of like effect to those above mentioned. The recital and the granting clause are parts of the same sentence and both must be considered in determining the true meaning. The grant as a whole must be understood as if it read: "to John, for and during his natural life, and after his death to the children or other lawful heirs of his body, who may survive him, for their final use, benefit and behoof." The deed was evidently drafted upon a form in common use for a conveyance in fee simple and the granting clause, as it first stood, granted such an estate. The interlineation described John's estate as for his life only, but it would have been ineffectual to escape the rule in Shelley's case, if not further qualified. The words added by the recital were manifestly inserted for the purpose of stating the intent more accurately than it was expressed in the first part of the sentence. The recital is therefore the significant part of the deed and it should control the interpretation as far as possible. Under the decisions above cited, it is clear that the word, "children," and the words, "who may survive him," qualifying the phrase, "lawful heirs of his body," and in connection with the declaration that the conveyance is for the "final use, benefit and behoof" of such survivors, were intended and used to show that the grant to John was for his life, only, and that the remainder was to go to the surviving children, or grandchildren, directly by the deed and not by inheritance, and that they, and not John, were to constitute the new stock or root of inheritance of the estate. The use of the expression "who may survive him" or similar terms, shows that the mind of the grantor was directed to the particular persons surviving at the death of John and not to his posterity generally. The words, "or other lawful heirs of his body" make it plain that grandchildren would take, in the event that any of John's children should die before his death and leave children surviving

They were evidently inserted for that purpose, and were not used in the technical sense first above stated.

It is further contended by the respondents that the granting clause itself is devoid of words constituting a grant of the remainder. If the words "descend to" were omitted therefrom, the intent to grant the remainder would be clear, although, under the authorities, in the absence of the recital, the operation of the rule in Shelley's case would override and defeat that intent. (*Norris* v. *Hensley,* 27 Cal. 446; 2 Devlin on Deeds, 3d ed., secs. 846, 846c.) The clause declares a life estate in John "and after his death then to descend to his heirs and assigns." The word "descend," although literally denoting a passing by inheritance, is often used as a word of transfer. In the connection in which it here occurs, this is its usual signification. (*Doren* v. *Gillum,* 136 Ind. 139, [35 N. E. 1101]; *Taney* v. *Fahnley,* 126 Ind. 91, [25 N. E. 882]; *Aydlett* v. *Swope,* 17 S. W. (Tenn.) 209; *Stratton* v. *McKinnie,* [62 S. W. (Tenn.) 640; *Tate* v. *Townsend,* 61 Miss. 319; *Keim's* Appeal, 125 Pa. St. 487, [17 Atl. 463]; *Halstead* v. *Hall,* 60 Md. 213; *Dennett* v. *Dennett,* 40 N. H. 501; *Harrington* v. *Gibson,* 109 Ky. 752, [60 S. W. 915].) Under these authorities, this passage is to be read as if it declared that after John's death the land should "go to," or "vest in" his heirs, the latter word being used, as before stated, as a description of the persons to whom the remainder is transferred, and not to indicate a taking by the law of inheritance.

The *habendum* and warranty clause are of little importance. They are in the usual form and were evidently printed, if a printed form was used, or copied mechanically, if a form book was used. The incongruity between them and the granting clause, as changed, and as modified by the recital, was apparently not observed when the changes were made, and the failure to change them also may reasonably be attributed to inadvertence.

The conclusion is that the decision of the court below that the deed conveyed the fee to John was erroneous.

The judgment is reversed.

Sloss, J., and Angellotti, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a rehearing of this cause and filed the following opinion on February 15, 1913:

BEATTY, C. J.—I dissent from the order denying a rehearing of this cause, and from the judgment.

In this state the rule in Shelley's case governs the construction of all deeds of conveyance made prior to January 1, 1873. (*Norris* v. *Hensley,* 27 Cal. 439; *Barnett* v. *Barnett,* 104 Cal. 298, [37 Pac. 1049].) It is, as to such deeds, a rule of property. I cannot distinguish this case from *Norris* v. *Hensley* where the terms of a devise were held to bring it within the rule. I think it can be distinguished from *Montgomery* v. *Sturdivant,* 41 Cal. 297. These are our only authorities. The decisions in other states are conflicting. We should follow our own, however questionable when essential to the protection of vested rights.