[Civ. No. 2113.   Third Appellate District.—June 18, 1920.]

MARY COOPER et al., Appellants, v. WM. N. SELIG, Respondent.

[1] DEEDS—GRANT OF STRIP TO CITY—USE FOR ROAD PURPOSES—ESTATE CONVEYED—ABANDONMENT OF USE.—Where the owner of land conveys a strip thereof to a city by a grant, bargain, and sale deed in the usual form, but providing, however, in the *habendum* clause, that it is "for the purposes of a public road of said city," the city acquires an unconditional fee in the land, and not a mere easement, and upon the abandonment of the street no change of title is effected.

[2] ID.—LIMITING CLAUSE — DOUBTFUL IMPORT — CONSTRUCTION OF.—Where the asserted modifying or limiting clause of a deed is of doubtful import, the fee contemplated by the granting clause of the deed will not be cut down.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles Lantz, Howard F. Shepard and Samuel M. Garroway for Appellants.

Loewenthal, Loeb & Walker for Respondent.

BURNETT, J.—The action is in ejectment to recover possession, together with the damages for use, of a strip of land which was formerly a part of a public street in the city of Los Angeles. The evidence fails to show any interest in the property on the part of T. A. Davis, and we shall, therefore, in the opinion, refer to Mary Cooper as the only plaintiff and appellant. According to the statement of her counsel, she claims relief "under the principle of law that the adjoining owner of realty owns the fee to the center of a street, subject only to the easement for street purposes, and upon the abandonment or vacation of the street, takes the fee freed of the easement." On March 11, 1882, John S. Griffin conveyed to the city of Los Angeles, by a grant, bargain, and sale deed in the usual form but providing, however, in the *habendum* clause, that it was "for the purposes

of a public road of said city," a strip of land sixty feet in
width, being thirty feet on each side of a line which was
described in the deed. At the date of this deed, the grantor
was the owner of the land on the westerly and also on the
easterly side of this sixty-foot strip. This public road was
called "Mission Road," and ran in a general north and
south direction, and it will be referred to hereafter as "Old
Misson Road."

In September, 1883, John S. Griffin conveyed to Louisa H.
Griffin, his wife, certain land which lay on the westerly side
of "Old Mission Road" and adjoined it along the portion
of the former street here in controversy. Louisa H. Griffin
recorded a plat of the property conveyed to her, calling it
the Park Tract, and showed her tract as adjoining "Old
Mission Road" on the west. The lot which adjoined said
road along the land here involved was designated on her plat
as lot 17, block "C." Thereafter, the title of Louisa H.
Griffin in the Park Tract (including said lot 17, block "C")
was, by decree of distribution made upon the settlement of
the estate, distributed to John S. Griffin; and this lot, by
conveyance from said John S. Griffin, became the property
of plaintiff, Mary Cooper, prior to the commencement of this
action.

Shortly prior to the year 1915, the city of Los Angeles
widened "Old Mission Road" to one hundred feet and
moved it at the point here involved some forty feet westerly
from its former course. This wider street, referred to herein
as "New Mission Road," being situated some forty feet
westerly and toward lot 17, block "C," left a portion of the
westerly half of "Old Mission Road" lying easterly from
"New Mission Road," which portion prior to the street
being moved adjoined the said lot 17, block "C." This
abandoned portion of "Old Mission Road" was vacated by
the city of Los Angeles under an ordinance, which was duly
passed.

The defendant owned the land on the easterly side of the
old road and bordering thereon, and after the new road
was laid out he moved his fence up to the easterly line of
said new road. It is conceded by appellant that respondent
had a right to take possession of the portion of the old
road which lay to the east of the center line thereof. The

controversy, however, is over the strip which was bounded on the east by the center line of the old road and on the west by the new road, which strip is a part of the westerly half of the old road which formerly adjoined said lot 17, block "C," of the Park Tract.

Respondent characterizes the action of appellants as an attempt "to jump across the full breadth of 'New Mission Road,' alight on the easterly line thereof, and interpose themselves between respondent and the present highway, depriving him of access to the road throughout the length of the strip of land described in his pleadings."

However, regardless of either party's animus or convenience, the question here is simply one as to the proper interpretation of certain instruments, and particularly of said deed from Griffin to the city of Los Angeles. For, if that deed conveyed to said city the entire estate in said strip of land, then it is conceded that the judgment of the lower court must be upheld. But if thereby an easement only was granted, then it would be necessary to inquire whether any merit exists in the contention of respondent that appellant has not succeeded to the fee in said strip.

At the outset it may be stated that there is really no dispute that if the fee was conveyed to the city, no change in the title was effected by the abandonment of the street, but if the fee to said strip was in the owner of the abutting property, then upon said abandonment the complete title became vested in said owner. (*San Francisco* v. *Center,* 133 Cal. 673, [66 Pac. 83]; Elliott on Roads and Streets, secs. 1190, 1191.)

Various circumstances are suggested by both parties as lending support to their respective interpretations of said deed, but they seem to furnish little, if any, aid to the proper solution of the question. To ascertain the intention of the parties, we must rely upon the language which they used in the instrument, viewing it in the light of the recognized rules of interpretation for such cases.

[1] The granting part of said deed is as follows: "The said party of the first part, for and in consideration of the sum of five hundred dollars . . . does by these presents, grant; bargain and sell and convey and confirm unto the said party of the second part forever, all that certain tract and parcel of land situated in the city and county of Los

Angeles, State of California, bounded and described as follows'' (describing it).

"Together with all and singular, the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof." Then follows the *habendum* clause: "To have and to hold all and singular, the said premises, for the purposes of a pubilc road of said city, unto the said party of the second part forever."

It is properly stated by respondent that except for the expression, "for the purposes of a public road of said city" in the *habendum* clause, there is not a word to indicate any intention than that the grant was of an unconditional fee. The question is whether this expression operates to limit the grant to that of an easement.

In urging their respective claims, both parties attach much importance to certain cases as precedents, which it may be well to notice briefly.

One view suggested by respondent is that any possible effect of said expression to limit the conveyance to an easement is obviated by the grant of the *reversion,* and it is said: "The grant of the reversion is on its face a complete contradiction of the claim that it was intended by the parties that the reversion should not be granted." In support of this particular contention is cited *Vaughn* v. *Stuzaker*, 16 Ind. 338, wherein one Bassenger had conveyed to Jenks certain property for the purpose of a street together with the reversion and reversions. The court held that the effect of the reversionary clause was to vest in Jenks "the reversionary right, if any, that might have arisen out of the failure to apply the property to the purpose for which it was conveyed." Appellant claims that in holding that a reversion was created by the use of the words, "to have and to hold for the purposes of a public road," said decision is contrary to all other cases cited by respondent. Attention is also called to the fact that it is somewhat ancient, having been rendered in 1861. However, no doubt many important legal principles were promulgated by the courts long prior to that date. As to a reversion there is this to be said: If the deed herein conveyed an unlimited fee, or simply an easement for highway purposes, no estate would be created by opera-

tion of law, but if thereby was granted a fee upon condition subsequent, then, manifestly, upon the failure of said condition a reversionary interest would be involved. We may add that it is quite possible to construe said deed so as to fall within any of these designations. In other words, it would not be altogether unreasonable to say that it conveyed an unconditional fee, or simply an easement, or the fee upon condition subsequent. If we have the last of these, then, of course, the grant of the *reversion* would be quite important. At any rate, the use of said expression seems to be some evidence of the intention of the grantor to convey to the grantee the entire estate in the property.

In *Greene* v. *O'Connor*, 18 R. I. 56; [19 L. R. A. 262, 25 Atl. 692], the supreme court of Rhode Island held that the words, "this conveyance is made upon the condition that the said strip of land shall be forever kept open and used as a public highway, and for no other purpose," inserted between the description of the property and the *habendum* clause, did not create a condition subsequent, that it was merely a declaration of the purpose for which the land conveyed was to be used and improved and that "such a declaration does not create an estate on condition, but merely imposes a confidence or trust in the land, or raises an implied agreement on the part of the grantee to use the land for the purpose specified."

In *Kilpatrick* v. *Mayor of Baltimore*, 81 Md. 179, [48 Am. St. Rep. 509, 27 L. R. A. 643, 31 Atl. 805], it was said that conditions subsequent are not favored in law, that they will not be raised by implication, and that a deed of land to a municipality which in the *habendum* clause adds the words, "as and for a street to be kept as a public highway," does not create a condition subsequent and "the property does not revert to the grantor because of the failure to use it as a street."

In *Rawson* v. *School District*, 7 Allen (Mass.), 125, [83 Am. Dec. 670], the grant was to the public for a burying place, and the supreme court of Massachusetts held that the deed was not to be construed as a grant on condition subsequent, solely for the reason that it contained a clause declaring the purpose for which the premises were to be used, particularly since such purpose did not inure specially to

the benefit of the grantor and his assigns, but was in its nature general and public and there were no words indicating an intent that the grant was to be void if the declared purpose was not fulfilled. The court said: "Language so equivocal cannot be construed as a condition subsequent without disregarding that cardinal principle of real property already referred to, that conditions subsequent which defeat an estate are not to be favored or raised by inference or implication." A similar view is expressed in Devlin on Deeds, third edition, section 838b and section 970.

In *Eldridge* v. *See Yup Co.*, 17 Cal. 49, a lot had been conveyed to Athaie by deed of bargain and sale in the usual form except that in the *habendum* clause these words appeared: "For the use of a Chinese Church, or place of religious worship or moral instruction, under his direction and in conformity to the rules of the See Yup Company." The supreme court cited with approval cases holding that, after 'the words of grant in the usual form, any restriction upon the use of the land by the grantee is void, and "where the *habendum* clause is irreconcilable with the premises, the premises must prevail," and concluded that the mere direction in the deed as to how the property was to be used did not qualify the title nor raise a use or trust.

In *Taylor* v. *Danbury Public Hall Co.*, 35 Conn. 430, the deed conveyed to the town a piece of land "for the sole use and purpose of a public highway." The court said: *"This deed conveys something more than an easement.* Whatever effect ought to be given to the limitation under other circumstances, so long as the premises continue to be used for a highway the town has a complete title, in the enjoyment of which it cannot be disturbed, *not only to a right of way, but to the fee of the land."* It was further declared that the grantors parted with their title to the original highway and they had nothing left to convey.

There are other cases to the same effect, holding that such expressions as "for the purposes of a public road" are directory only, that they do not qualify or limit a grant which is in absolute form, or operate to reduce the conveyance to that of an easement only. Appellant attempts to distinguish those cases from this by urging the view that therein no contention was made that only an easement was

conveyed, but that the controversy was whether an unconditional or a defeasible fee was granted. But the character of the estate was certainly involved and the courts held that the fee was not qualified by the expression of the purpose to which the property was to be devoted.

Appellant has not cited any case to the contrary directly in point, but she claims that by somewhat analogous decisions her theory is supported.

Among these is *Montgomery* v. *Sturdivant*, 41 Cal. 290. Therein, though, the *habendum* clause plainly provided that the grantees were to hold the property for life and the court properly held that this was to be considered in determining the intention of the grantor. The supreme court said that without the *habendum* clause the deed would have conveyed an estate in fee simple, but that said clause could not be disregarded without ignoring the clear intention of the parties. The case was substantially the same as though the deed had provided that the party of the first part grants to the party of the second part certain real estate to have and to hold for the natural life of the grantee.

In *Anderson* v. *Yoakum*, 94 Cal. 227, [28 Am. St. Rep. 121, 29 Pac. 500], the controlling question was as to the effect of a quitclaim deed upon an after-acquired title although the court said that an *habendum* clause may limit and gratify the interest conveyed. The case has no bearing upon the interpretation of the deed before us.

A case more nearly in point is *Pellissier* v. *Corker*, 103 Cal. 516, [37 Pac. 465]. The deed therein provided: "I, David Winbigler, for value received, do hereby grant to W. V. Rinehart, his heirs and assigns, for the sole purpose of an alley-way to be used in common with the owners of other property adjoining said alley-way, all that tract of land," etc. The supreme court said: "We think this deed is an express grant of an easement—a right to the use and nothing more." It is to be observed, though, that the qualifying words are in the granting part of the deed and so clearly connected with the word *grant* as naturally to suggest that what was intended was simply to convey the right to the use of the property for an alley.

Moreover, said statement was entirely unnecessary to the decision, since there was, as the supreme court held, a dedi-

cation of the strip of land "for use as an alley-way by the owners of the adjacent lots," and as the use had not been abandoned such owners were entitled to continue it without interference, regardless of the question whether the fee or only an easement was conveyed by the deed to Rhinehart. The case did not involve, as does this, an action by one asserting title after the use has been discontinued, but it was brought by one of the owners of adjoining property for whose benefit the conveyance had been made for an injunction to restrain interference with the use of the property for an alley-way. Applying the principle to the case herein, it would, of course, not be contended that if Dr. Griffin had conveyed said strip to a third party while the city was actually using it, the municipality could thereby be precluded from the further use of the land as a street regardless of the question whether the city owned the fee or simply an easement. It is to be further observed that in the Pellissier case the court finally reached the conclusion that the legal title was held by Rhinehart, his heirs and assigns, in trust for the benefit of the other property owners and subject to an easement created by the dedication of the land as an alley-way. Probably there is not much difference in the legal effect of the two statements. At least, as far as the merits of that action were concerned, it was unimportant whether the deed to Rhinehart conveyed merely an easement or the fee in trust subject to the easement. But herein, if the deed to the city of Los Angeles conveyed the legal title in trust for the purpose of a highway, then significance should be attached to the grant of the *reversion.*

In *Barnett* v. *Barnett,* 104 Cal. 298, [37 Pac. 1049], the *habendum* clause clearly limited the interest conveyed to a life estate. It is true that the court said: "The intention of the parties to the grant is to be gathered from the instrument itself and determined by a proper construction of the language used therein, but for the purpose of ascertaining this intention the entire instrument, the *habendum* as well as the premises, are to be considered, and if it appear from such consideration that the grantor intended by the *habendum* clause to restrict or limit or enlarge the estate named in the granting clause, the *habendum* will prevail over the granting clause."

In *Burnett* v. *Piercy*, 149 Cal. 178, [86 Pac. 603], it appeared from an examination of the deed and a contemporaneous instrument constituting a part of the same transaction that it was clearly the intention of the parties to convey a life estate and the supreme court very properly said: "When upon a fair consideration of all the parts of a deed, and of the contemporaneous instruments constituting parts of the same transaction, it appears that it was the intention, by other expressions in the deed, to limit and qualify the effect and meaning of the granting clause, so that it should not operate to transfer the entire estate, but only a limited estate, the rule that repugnant conditions restraining alienation are void, does not apply, unless the conditions refer to the limited estate actually granted. In such cases the other provisions in the deed operate on and affect its true meaning; the granting clause is to be taken in the limited sense which the entire instrument shows it was intended to have, and the limitations and conditions relating to the fee are not to be considered as repugnant to the grant, but as descriptive of the estate conveyed, and in harmony with the grant when truly interpreted." The decision follows well-established principles, but it is controlling here only upon the assumption that the *habendum* clause shows an intention to limit the estate to an easement.

The principal question in *Gordon* v. *Cadwalader*, 164 Cal. 509, [130 Pac. 18], was as to the meaning of the term "heirs" used in the deed in controversy. From a consideration of the whole instrument it was held that the rule in Shelley's case did not apply, and that the word "heirs" was not used in the technical sense. The situation there was so different from this that the decision cannot afford us much assistance.

Some cases from other jurisdictions are cited by appellant, but further than stating general principles that apply to the interpretation of deeds they are not in point.

While the case is not free from difficulty, yet, we think, the recital of the purpose for which the land was to be used should have no greater force than if the grantee in consideration of the conveyance had promised to use the land for the purposes of a highway. If such had been the case, it would not be disputed, in view of the decisions, that the promise to so use the land would be construed as a covenant and not

a condition, and the fee would not thereby be affected, in the absence of a stipulation for forfeiture and re-entry.

In construing this instrument, it is difficult to overlook the fact that if Dr. Griffin really intended to convey only an easement, he could easily have so expressed his purpose. [2] His failure to do so, together with the application of the principle that where the asserted modifying or limiting clause is of doubtful import the fee contemplated by the granting clause of the deed will not be cut down, and the rule that a grant is to be interpreted in favor of the grantee (sec. 1069, Civ. Code), in connection with the other considerations to which we have directed attention, lead us to the conclusion that the trial court should be upheld.

The judgment is affirmed.

Nicol, P. J., *pro tem.*, and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 16, 1920.

All the Justices concurred, except Sloane, J., who was absent.