PHILIP H. ZWEIBEL V. FANNIE PIATT MYERS.

FILED JUNE 3, 1903. No. 12,882.

1. **Trial: RIGHT TO OPEN AND CLOSE.** In the trial of a case the party first required to produce evidence is entitled to open and close the argument.

2. **Adverse Claimants: PRIVITY: TACKING.** A privity must be shown between adverse claimants before the possession of one can be tacked to the possession of the other for the purpose of completing title by prescription.

3. ———: **RECOGNITION OF SUPERIOR TITLE.** One claiming title to lands by adverse possession may, before the statute has finally run in his favor, purchase a tax deed to the premises without acknowledging the superior title of the record owner. But if he purchases a tax certificate and accepts payment of the same from the record owner through the county treasurer, such act is a recognition of the superior title.

4. **Evidence.** Evidence examined, and *held*, sufficient to sustain the judgment.

ERROR to the district court for Sarpy county: GUY R. C. READ, DISTRICT JUDGE. *Affirmed.*

*G. M. Mullins, Howard H. Baldrige* and *William A. De Bord,* for plaintiff in error.

*Isaac Congdon, contra.*

OLDHAM, C.

This was an action in ejectment to recover possession of a tract of land containing about 85 acres situated in

Sarpy county, Nebraska. The petition was in the statutory form; the answer a general denial; there was judgment in the court below for plaintiff and defendant brings error to this court.

When the taking of testimony began, plaintiff's counsel stated that he did not care to insist on a judgment for damages for the unlawful holding of the premises, but would be satisfied with a judgment for possession. Defendant thereupon offered to admit, that the plaintiff held the record title to the premises, and claimed the right to open and close the case, saying that he would rely upon a title by adverse possession. The court, however, permitted the plaintiff to introduce her deeds and open and close the argument to the jury, and its action in this matter is the first alleged error called to our attention.

The right to open and close the argument in the trial of a cause, is properly determined by an inspection of the pleadings, and section 283 of the code says: "In the argument, the party required first to produce his evidence shall have the opening and conclusion." In the case at bar if no evidence had been introduced, under the pleadings defendant would have been entitled to a judgment; hence plaintiff, in order to recover, would have been compelled to have shown not only that she held the record title to the premises, but also that defendant was wrongfully in possession of the same. Each of these allegations were denied by defendant's answer. It is therefore apparent that the action of the trial court was fully warranted.

Two other objections are called to our attention in defendant's brief; one is as to the action of the trial court in giving paragraph 8 of instructions, on its own motion; and the other, that the judgment is not sustained by sufficient evidence. As a review of the testimony contained in the bill of exceptions is necessary to an intelligent discussion of each of these objections, we will consider them together. The material facts in the record are, that the land in controversy was patented by the United States, in

1864; that it is bounded on the south by the Platte river, is rough in its character, covered to some extent with scrubby timber, and adapted only to pasturage or stone quarrying purposes; that the patentee dwelt upon and remained in possession of the land until about 1868 or 1869, when he conveyed it to plaintiff's husband; that plaintiff's husband subsequently conveyed the premises through a third party to plaintiff, who holds the record title to the land; that defendant's father, George Zweibel, owned lands adjacent to this land on both the north and the east; that at a very early day he fenced his cultivated lands lying east of the land in dispute; that in 1871 he also fenced the lands lying north; that in 1875 he extended a fence from the south boundary of his lands practically to the river, thereby enclosing the lands in dispute with another tract of land called the Hamilton land, lying immediately west of it; that in 1878 defendant's father died, intestate; that defendant, his mother and brothers lived together on his estate until 1884. The only evidence of an attempted adverse holding of this land by defendant's father, was the fact of its being practically enclosed by the fences which he constructed for the purpose of surrounding other lands and also some evidence that the lands when enclosed were used by him for pasturing his stock; there is also some claim of adverse user from the fact that he took rocks from a stone quarry on the land, before it was enclosed. The latter claim, however, is not established because of the fact that at the time he took this stone, the patentee of the land was in the actual possession of it, which negatives the idea that such holding was adverse. *Smith v. Hitchcock*, 38 Neb. 104. The evidence of pasturing only tends to show that the land was used as a commons for that purpose up to the time of its enclosure, and that after the death of defendant's father, the mother and children occupied the homestead and used this with other lands enclosed for pasturage, until a division of the estate was made among them by partition deeds, in the year 1884.

When the estate was voluntarily partitioned between the the heirs, defendant received a deed to the lands adjacent to the tract in dispute, but this deed did not purport to convey any of the lands in controversy. In connection with the voluntary partition of this land among the heirs of the deceased ancestor, the defendant filed an affidavit in which he described the lands owned by his father at the time of his demise, and did not include in this description any claim to the lands in controversy. After the division of the land in 1884, defendant remained in possession of what was called the old home place, and continued to pasture the disputed lands. Up to this time neither defendant nor his ancestor had ever paid any of the taxes on the land, but the taxes had been paid by plaintiff's grantor regularly until the year 1883, at which time the taxes became delinquent, and the lands were sold for the taxes of that year together with the taxes for 1860, 1861 and 1862. Defendant purchased this tax certificate. The year following, plaintiff's grantor redeemed from this tax sale. Defendant surrendered his certificate and received from the county treasurer the money paid by plaintiff's grantor. In view of this state of the record, the court gave the instruction objected to, which is as follows:

"If you find from a preponderance of the evidence that the defendant, on or about the 8th day of December, 1884, purchased said premises at a sale for taxes, and that the plaintiff on or about the 6th day of January, 1885, redeemed said premises from said sale and paid money to redeem the same to the treasurer of Sarpy county, and that the defendant received said money, so paid to redeem said premises from said tax sale, from said treasurer of Sarpy county, then you must find that the defendant thereby recognized the plaintiff as the owner of said premises and he can not claim or assert any prior acquired interest in or to said premises; and the adverse possession of the defendant, if any, must date from and begin at a time subsequent to the date on which he took and received said money."

The first objection urged to this instruction is that the court should have qualified the instruction by telling the jury that the defendant would not be estopped by receiving the money from plaintiff or her grantor for the tax certificate, if he had actually perfected his title by ten years' adverse possession before doing so. If the evidence in the record was sufficient to establish an affirmative title in the defendant at the time he received this money, this contention would no doubt be well founded, but by reference to the testimony already reviewed, it is plain that the adverse holding even of defendant's ancestor could not date from an earlier period than the year 1875, the time at which the lands were practically enclosed by the fence along the west line of the Hamilton tract, and if we should regard this fact as sufficient to prove a claim of ownership, we would then date the beginning of the adverse holding of the ancestor from 1875. The record shows that the ancestor died in 1878, before the title was quieted in him. We next find that the widow and heirs occupied the estate of the ancestor, jointly, until 1884, at which time it was divided among themselves by partition deeds without any attempt to convey this land. Consequently there is no privity of possession of the disputed land, either by contract, deed or devise between the ancestor and the heirs, and the rule seems to be firmly established that the possession of one adverse claimant can only be tacked to the possession of another for the purpose of completing title by prescription when there is a privity of grant between them. *Pohlman v. Evangelical Lutheran Trinity Church,* 60 Neb. 364; *Bullen v. Arnold,* 31 Me. 583; *Hobbs v. Ballard,* 5 Sneed (Tenn.), 395; *Crispen v. Hannavan,* 50 Mo. 536; *Doswell v. De La Lanza,* 61 U. S. 29, 15 L. ed. 824. No privity being established, defendant's possession can not be tacked to that of the ancestor and would at most date from the year 1878, or less than ten years before the acceptance of the money from plaintiff's grantor in payment of the tax certificate. Consequently, under the testimony in the

case, the instruction of the court was not prejudicial for failing to make this qualification.

It is further urged that the court in the instruction should have told the jury that the defendant would only be estopped by this act, if he actually knew that the money he got from the treasurer was paid by plaintiff or her grantor. We do not think this objection tenable under the evidence in the case. When the defendant was notified of the redemption from the tax certificate, he went to the office of the county treasurer, took the money and receipted the redemption book, which showed plainly who the owner was that had redeemed. He made no effort to explain his conduct in this matter at the trial of the case, and the supposition that he might have imagined that some one else was redeeming, is but an afterthought of his skillful counsel. The question then to be determined is, does the instruction fairly state a correct proposition of law applicable to the facts proved in this case? We think it does. Defendant had an unquestionable right to purchase this tax certificate, without recognizing any outstanding title in the plaintiff, and he had a right, if he chose, to procure a tax deed on this certificate and hold the same, without recognizing any other outstanding title than the lien of the state government for its taxes, and if he had done this the instruction would have been wholly unwarranted and highly prejudicial, but when he purchased the tax certificate and was informed of the redemption, it was his duty before accepting the money to inquire and see who was claiming the right to redeem, and when he went to the treasurer's office and receipted the redemption book, with the name of the owner who was claiming to redeem before his eyes, his act was tantamount to an acknowledgment of plaintiff's ownership of the land. *Hull v. Chicago, B. & Q. R. Co.*, 21 Neb. 371.

With reference to the testimony of the adverse holding of the defendant from the year 1885 (the time of the redemption of the tax certificate), the evidence shows that from 1890 to 1893 he made efforts to purchase this land

from plaintiff's agent; that he made no effort to pay any taxes on it until 1896, and that the taxes were paid each year by the plaintiff until that time. True, the evidence does show that from 1885 to the filing of this suit in July, 1900, the defendant pastured this land, and that some time in the year 1890 he sold stone from the quarry on the land and did other acts that might show an adverse possession; on the other hand the evidence of the different attempts to purchase the lands of plaintiff within the statutory period, was a strong circumstance tending to show that defendant's holding was servient rather than adverse in its nature, and this, in connection with other testimony in the record, we think sufficient to sustain the verdict of the jury. *Knight v. Denman,* 64 Neb. 814; *Roggencamp v. Converse,* 15 Neb. 105.

It is therefore recommended that the judgment of the district court be affirmed.

AMES and HASTINGS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.