[S. F. No. 6501. Department Two.—August 4, 1915.]

PEOPLES WATER COMPANY (a Corporation), Respondent, v. PAUL ANDERSON, Appellant.

ADVERSE POSSESSION—PRESCRIPTION—CONSTRUCTION OF CODE SECTIONS. Section 321 et seq. of the Code of Civil Procedure, providing for the acquisition of title to land by adverse possession, and sections 1006 and 1007 of the Civil Code, providing for the acquisition of title by prescription, are correlated and to be construed together. They deal with but one kind of title, which, indifferently, may be called title by prescription or title by adverse possession.

ID.—EJECTMENT—WANT OF CONTINUITY OF ADVERSE POSSESSION.—The evidence in this action of ejectment, in which the defendant relied on a prescriptive title, is held to show a lack of continuity of adverse possession essential to establish such title.

. APPEAL from a judgment of the Superior Court of Alameda County and from an order refusing a new trial. T. W. Harris, Judge.

The facts are stated in the opinion of the court.

Milton Shepardson, for Appellant.

Thomas M. Bradley, and Harry E. Leach, for Respondent.

HENSHAW, J.—The action is in ejectment. Plaintiff showed title in itself by mesne conveyances from the patentee of the United States government. Defendant relied upon title by prescription. The land, consisting of about one hundred and twenty acres, is situated in the counties of Alameda and Contra Costa, approximately one-half in each county. Taxes were levied and assessed upon these lands. In every instance where these taxes were paid they were paid by respondent and its predecessors in interest. In no instance were any of them ever paid by appellant or his predecessors in interest. But to this appellant urges that he is not claiming title by adverse possession under section 321 et seq. of the Code of Civil Procedure, but that he is claiming title by prescription under sections 1006 and 1007 of the Civil Code. We are therefore asked to say that the legislature provided for the acquisition of title by simply occupancy and nothing else, which title is a full and complete title by "prescription," and that it also provided for the acquisition of a similar title by occupancy for the same length of time, with the additional requirements specified in section 325 of the Code of Civil Procedure, which latter title is a title by "adverse possession." One would scan our statutes long and carefully before convicting the legislature of such stupidity or folly. But of course it is not necessary to do this. The sections of the Civil Code and of the Code of Civil Procedure are correlated and to be construed together. They deal with but one kind of title, which, indifferently, may be called title by prescription or title by adverse possession. It is of course so recognized and declared in our decisions. (*Thomas* v. *England*, 71 Cal. 456, [12 Pac. 491]; *Big Three Mining Co.* v. *Hamilton*, 157 Cal. 130, [137 Am. St. Rep. 118, 107 Pac. 301].) The payment of taxes is essential to the acquirement of title in every such case.

The second proposition advanced is that appellant and his predecessors were justified in their failure and refusal to pay these taxes because one and all as levied and assessed they were void.  Into this consideration we need not enter, for the evidence in other respects fails to establish the title contended for.  And in particular in this respect, that there is no such continuity of possession shown by appellant as is necessary to establish the adverse holding for the statutory period of time.

The case is one of those familiar to the land litigation of Alameda and Contra Costa counties, of squatter entries upon lands, growing out of overlapping grants, or doubtful boundaries of grants, of sobrantes and of the delays of the United States in confirming titles by patents.  All the testimony of early occupation rests upon the statements of witness Roy, which were so vague, so indefinite and so uncertain as scarcely to rise to the dignity of evidence.  Roy had known the place "eighteen or twenty years."  He had lived on the place a year "in 1910 or 1908."  One Lobb lived there "along in 1890; possibly 1892, 1893, 1895, along there."  "Then after Lobb came Smith.  And then after Smith came butcher Meyer."  His testimony is all of this character, and it is all of the testimony upon the subject until, as appears from the testimony of another witness, Smith, he bought the property by a quitclaim deed dated October 3, 1906, and recorded on March 2, 1907.  From that date on the proof of title is that in May, 1907, for an expressed consideration of ten dollars Smith quitclaimed his interest to one Thomas Anderson, and Thomas Anderson and his wife, Mrs. Bertie Anderson, entered into or succeeded to the possession of Smith.  Smith's deed was to Thomas Anderson, and the name of the husband of Mrs. Bertie Anderson was Peter.  This trifling discrepancy, however, may be disregarded in view of the fact that Thomas or Peter Anderson and his wife Bertie continued in possession of the land until the husband died in 1908.  Thereafter, in 1910 or 1911, Bertie Anderson made her conveyance to Paul Anderson, defendant herein.  Besides his wife, it appears that Thomas or Peter Anderson left a child, who, of course, was an heir and entitled to share in his estate.  His estate was not probated and the record contains no evidence worthy of consideration touching the continued possession of Mrs. Anderson of the property after her husband's death.  His possession was unquestionably interrupted by his death,

since upon his death the right of possession vested in the personal representatives of the deceased, while title alone vested in the heirs. (Civ. Code, secs. 1341, 1363, 1384.) Appellant appears to argue that because the title vested in the heirs the possession or right of possession remained in them. In certain cases, as in that of the homestead, the right of possession is transferred to the widow, but it is still a new possession and in effect a new seizin. In what cases and under what circumstances possession will be considered to have been transferred to and taken by the widow or by the heirs, we need not here pause to consider. Reference may be made to *Larson* v. *Anderson*, 74 Neb. 361, [104 N. W. 925]; *Greenfield* v. *McIntyre*, 112 Ga. 691, [38 S. E. 44]; *Wicks* v. *Wicks*, 98 Md. 307, [56 Atl. 1017]; *Pearson* v. *Adams*, 129 Ala. 157, [29 South. 977]; *Zweibel* v. *Myers*, 69 Neb. 294, [95 N. W. 597]; *Sawyer* v. *Kendall*, 10 Cush. (Mass.) 241. We need not, we say, consider these things, for even if it be conceded that the heirs had the right to continue in possession, and even to tack on their new possession to that of the ancestor, there is no evidence that this was done in the present case. So that there is a lack of a showing of a continuity of adverse possession essential to establish appellant's title without consideration paid to the question of taxes.

The judgment and order appealed from are therefore affirmed.

Lorigan, J., and Melvin, J., concurred.