[L. A. No. 6904. In Bank.—September 22, 1922.]

## JOSEPHINE M. AKLEY, Respondent, v. CHARLES N. BASSETT, Appellant.

[1] JUDGMENT—INCONSISTENCY WITH FINDINGS—VACATION AND ENTRY OF DIFFERENT JUDGMENT—CONSTRUCTION OF CODE.—While the superior court has jurisdiction on a proper motion made under section 663 of the Code of Civil Procedure to vacate a judgment as entered which is inconsistent with and not supported by the findings of fact, that section merely authorizes the substitution

189 Cal.—40

of the judgment that should have been given as a matter of law upon the facts found, and the court cannot on such motion change any finding of fact.

[2] DEED—LIFE ESTATE WITH REMAINDER—INAPPLICABILITY OF RULE IN SHELLEY'S CASE.—A deed conveying real property to the grantee "for and during the term of his natural life" and upon his decease "unto his legal heirs, according to the laws of the state of California respecting descents and distribution, and their heirs and assigns to and for their sole and only use, benefit and behoof, in fee simple absolute forever, but not to testamentary heirs and devisees of the party of the second part in such manner as to contradict, impair, avoid or vary the hereby declared and limited remainder," whether delivered prior or subsequent to January 1, 1873, is not within the rule in Shelley's Case which was only in force in this state until such date, when it was abolished by section 779 of the Civil Code, since the language of the deed clearly indicates an intention on the part of the grantor to limit a life estate in the grantee and to vest a full estate in his legal heirs according to the laws of the state respecting descents and distribution.

[3] APPEAL—JUDGMENT-ROLL—INSUFFICIENT SERVICE ON MINOR—CON-CLUSIVENESS OF FINDING.—Where an appeal is taken on the judgment-roll alone, the court is bound to accept the finding that the purported service of a summons on a minor under the age of fourteen years was not sufficient to confer jurisdiction over her person or jurisdiction to appoint a guardian *ad litem*, and the fact that the record contains some evidence bearing upon such finding which is not in itself sufficient to support it cannot be considered.

[4] JUDGMENT—FACTS SHOWING INVALIDITY—ADMISSION OR PROOF WITHOUT OBJECTION—EFFECT OF.—Where the parties admit facts which show that a judgment is void or if they are established without opposition, as a question of law upon such facts, the case is like that where a judgment is void upon its face.

[5] INFANTS—SERVICE OF SUMMONS—RESIDENT MINOR UNDER FOUR-TEEN.—The provision of subdivision 3 of section 411 of the Code of Civil Procedure requiring personal service of a summons upon a minor under the age of fourteen years residing within the state and also upon her father, mother, guardian, or other person designated by the statute is mandatory, and without such completed service the court acquires no jurisdiction over the person of the minor for any purpose, and such defect cannot be cured by the

---

2. Rule in Shelley's Case, note, 29 L. R. A. (N. S.) 968.

Effect of rule in Shelley's Case on limitation over, note, 3 Ann. Cas. 397.

appearance of any one of such persons other than the minor in his or her own behalf, or by the appointment of a guardian *ad litem.*

[6] ADVERSE POSSESSION—CLAIM UPON COLOR OF TITLE.—Where a claimant succeeded to land under a claim founded on the title of his father, who had a deed which implied full ownership, and under the decree of distribution in the father's estate, his entry and claim rested upon color of title under section 322 of the Code of Civil Procedure.

[7] ID.—TENANTS IN COMMON.—When a tenant in common is in possession of the whole premises, and exercises acts of ownership of an unequivocal character, overt and notorious, and of such nature as, by their own import, to impart information and notice to his cotenants that an adverse possession and disseisin are intended to be asserted against them, his possession is adverse.

[8] ID.—OUSTER—ACT OF TENANT.—Any act of the cotenant in the exclusive possession which manifests an intention on his part to hold exclusively for himself is equivalent in law to an actual ouster.

[9] ID.—ACQUISITION OF TITLE BY PRESCRIPTION.—A tenant in common who enters into the actual possession of land under claim and color of title, and who, with his predecessor in interest, has maintained possession, and exercised acts of ownership openly and notoriously, claiming the same adversely to other cotenants who are of age, and to all the world, and paying taxes assessed thereon for more than five years prior to the commencement of an action against him, thereby acquires title by prescription under the statute of limitations.

[10] ID.—CHARACTER OF POSSESSION.—While it is the rule that when one enters avowedly as tenant in common with others, his possession is the possession of the others, so long as the tenancy in common is not disclaimed and that in such cases to constitute the ouster there must be acts of the most open and notorious character, clearly giving notice to the world, and to all having occasion to observe the condition and occupancy of the property, that the intention is to exclude, and does exclude the cotenant, such rule has no application to a case where the possession of the person in question, was neither avowedly begun as a tenant in common, nor instituted under a deed or instrument which defined his title as such.

[11] ID.—CONVEYANCE BY LIFE TENANT—DEED PURPORTING TO CONVEY FEE—ENTRY AND POSSESSION—EFFECT UPON RIGHTS OF REMAINDERMEN.—Where a life tenant conveyed real property to one who entered into the open and notorious possession of the entire property under a deed which purported to convey the whole of the

7. Necessity of notice of adverse claim to start statute of limitations running between tenants in common, note, Ann. Cas. 1913D, 1312.

property in fee simple, and maintained his interest thereunder, the entry and possession which passed to the heir of the grantee, was an ouster of all persons claiming an interest in the property as remaindermen and was such a disseisin as set the statute of prescription in motion against them, at and from the time they had a right of entry.

[12] Id.—Life Estate—Statute of Limitations—Rights of Remaindermen.—A life tenant cannot by his dealings with the life estate make his or his grantee's possession adverse to the remaindermen, so as to start the statute of limitations against them during the life estate.

[13] Id.—Infants—Running of Statute.—An infant can be ousted from his possession either by a stranger or a cotenant, and the ouster sets the statute of limitations running in favor of the disseisor, but protection is given the infant by the provision of the statute that the adverse holding must continue from that date until the expiration of five years from his attaining his majority.

[14] Partition—Statute of Limitations.—The statute of limitations may be resorted to in an action of partition so far as it establishes an interest in the property, notwithstanding such an action between tenants in common is not barred by the lapse of time.

[15] Adverse Possession — Prescriptive Title — Construction of Code.—Sections 318 and 319 of the Code of Civil Procedure which prescribe seizin within a period of five years before the commencement of the action as a necessary condition of the right to maintain the same affect only the remedy, but not the right itself, while section 107 of the Civil Code pertaining to the acquisition of title by prescription, confers a substantive right.

[16] Id.—Ouster of Infant—Time of Commencement of Action.— Where a tenant in common was ousted from possession while a minor, such minor had five years after attainment of majority to bring an action either for the recovery of the property or possession thereof, or for the rents and profits, and such period was extended by the time that the defendant was out of the state.

[17] Id.—Partition—Laches—Bar of Action.—Where a tenant in common who had been ousted while an infant failed to commence an action for partition until seventeen years after she was in a position to assert her claim to an interest in the property, she was precluded by the application of the doctrine of laches from any recovery.

[18] Partition—Nature of Action.—A suit in partition under the code is, in its nature and essence, equitable, and though regulated to a great extent by the statute, partakes more fully, both in respect to the remedies provided and the mode of procedure, of the principles and rules of equity, than those of law.

[19] Laches—Burden of Proof.—It devolves on one seeking the aid of a court of equity, where the complaint discloses a great lapse

of time without the assertion of any claim, and after long-continued acquiescence in acts hostile to the claim, to show the circumstances indicating good faith and reasonable diligence on his part.

[20] ID.—DELAY IN BRINGING ACTION—EQUITY.—A party is not to be held barred from his remedy for a wrong alleged to have been done to him, on the ground that he has been guilty of laches, unless his delay in bringing action has been of such length and under such circumstances that it would be inequitable to enter into an inquiry as to the validity of his claim or to allow such remedy, and whether such is the situation is a question in the first instance for the trial court and if its conclusion thereon can reasonably be held to find sufficient support in the evidence, an appellate court should not interfere therewith.

[21] ID.—PLEADING.—The defense of laches need not be pleaded, but when it appears from the evidence that the seeker of relief in equity has been guilty of laches the court will deny such relief *sua sponte.*

[22] APPEAL—REVERSAL OF ORDER VACATING JUDGMENT—EFFECT OF. The reversal of an order granting a motion to set aside a judgment and to enter another and different judgment leaves the original conclusion of law and judgment in force, and it is unnecessary to make any order directing a new conclusion of law or the entry of another judgment.

APPEAL from an order of the Superior Court of Los Angeles County granting a motion to set aside a judgment and to enter another and different judgment and from the judgment entered following such order. Charles S. Burnell, Judge. Order and judgment reversed.

The facts are stated in the opinion of the court.

Millard Patterson, Donald Barker and Wm. H. Neblett for Appellant.

Robert B. Murphey, Daniel Hunsaker and Hunsaker, Britt & Cosgrove for Respondent.

WASTE, J.—This action was commenced by the respondent, Josephine M. Akley, and several others, for the partition of 814 acres of land situated about fifteen miles from the city of Los Angeles, being a part of the Rancho La Puente, and to recover from the defendant Charles N. Bassett, who is the appellant here, their respective propor-

tionate shares of the rents, issues and profits of the alleged common property, received and retained by him.

The defendant appeals from an order of the trial court granting the motion of the plaintiff Josephine M. Akley to set aside the judgment theretofore entered against her and in favor of defendant Bassett, and entering another and different judgment, and from the judgment entered following such order.

The findings of fact and conclusions of law, as first made, the records, pleadings and files of the cause on which the motion below was considered, the "amended and corrected conclusions of law," on which the different judgment was based, and the judgment itself—all constituting the judgment-roll in the cause—are brought here on a stipulated and duly allowed bill of exceptions from which we have collated the pertinent facts.

By a deed dated October 11, 1870, and recorded March 27, 1873, William Workman and wife deeded the property in question to Joseph M. Workman "for and during the term of his natural life; and upon the decease of him," the said Joseph M. Workman, "unto his legal heirs, according to the laws of the state of California respecting descents and distributions, and their heirs and assigns to and for their sole use, benefit and behoof, in fee simple absolute forever; but not to the testamentary heirs and devisees of (Joseph M. Workman) in such manner as to contradict, impair, avoid or vary the . . . declared and limited remainder." Joseph M. Workman, who was the father of Josephine M. Akley, the respondent on this appeal, on March 1, 1895, by a grant deed conveyed the property here in question to O. T. Bassett, father of Charles N. Bassett, the appellant. Immediately after the delivery of said deed to O. T. Bassett, he commenced an action entitled Bassett *versus* Thornton et al., in the superior court of Los Angeles County, against the plaintiff here, and others, to quiet title to the land. The respondent was at that time a minor under the age of fourteen years. She had no guardian legally appointed, but her father and mother were both alive. A copy of the summons in the action of Bassett *versus* Thornton was delivered to the respondent personally, but none was served in her behalf, or at all, on any guardian, or on her father or mother, as required by section

411 of the Code of Civil Procedure relating to service of summons on a minor litigant. At no time did the respondent's father or mother or any guardian of her person or estate appear in said action in her behalf. It appears from the record that the court trying the cause made an order reciting that respondent and other defendants were minors, and appointing C. K. Holloway their guardian *ad litem* to appear and defend the action in their behalf.

Thereafter, on the twenty-fifth day of June, 1895, judgment was entered in Bassett *versus* Thornton, adjudging and decreeing that said O. T. Bassett was the owner in fee simple absolute of the land, and that none of the defendants to that action, including plaintiffs here, had any estate or interest therein. They were, by the terms of the judgment, forever barred from asserting any claim in or to the said lands and premises adverse to O. T. Bassett. No appeal was perfected from said judgment and in due time it became final. O. T. Bassett died intestate, January 1, 1898, leaving appellant surviving him as his sole heir at law. Such proceedings were thereupon had and taken for the administration of the estate of said O. T. Bassett that on the twentieth day of October, 1900, the land described in the complaint in this action was distributed to this appellant, who has not parted with the interest or title derived thereby. Joseph M. Workman, father of the respondent, died March 13, 1901.

When O. T. Bassett acquired the title to the land, by the deed from respondent's father, he entered into immediate possession and at once proceeded to develop the tract for subdivision and sale. He occupied, tilled and cultivated the land, dug wells, erected pumping plants for artificial irrigation of the soil, planted much of the tract to walnut trees, and to fruit trees of diversified kinds, and various crops, requiring artificial irrigation. The work of improvement was carried on openly and notoriously, and wide publicity was given thereto. Bassett also had prepared and filed for record a map designating the property as "Map of O. T. Bassett's Subdivision of the Workman Tract, being a part of the Rancho La Puente, etc.," with an indorsement thereon that he was the owner of the tract, and that the same was surveyed and subdivided at his request. Within three or four years after appellant suc-

ceeded to the estate of his father he began to sell different parcels of the land, and has sold to innocent purchasers, for value, all but 285.45 acres of the tract. These purchasers have erected dwelling-houses on their respective holdings, and generally have gone forward with intensive improvement and development of the property. Such was the condition of affairs, and the relation of the parties (except that respondent Josephine M. Akley became of legal age January 13, 1901), when this action was commenced on the twenty-fourth day of June, 1918.

The original complaint is in the usual form for partition actions, and therein the respondent alleged that each of the plaintiffs and the defendants Charles N. Bassett and Ida L. Kelso were and had been since March 13, 1901, the date of the death of Joseph M. Workman, the owners in fee simple, and in possession, of the premises described, as tenants in common; that the defendant Charles N. Bassett had "collected, received, obtained and kept" all of the "rents, issues and profits" of said real property in an amount "in excess of the sum of one million dollars"; that said defendant Charles N. Bassett "has not resided in or been within the state of California since January 1, 1902, for periods of time aggregating four years"; and that he never appointed an agent upon whom process could be served. The complaint prayed that the interests of the parties be ascertained, that all adverse claims be determined and that the property be partitioned according to the rights of the parties; that the defendant Charles N. Bassett be compelled to account for the amount of the rents, issues and profits "received from said real property," and that judgment be entered therefor against him.

On the sixth day of November, 1918, the defendant Charles N. Bassett filed his answer, the contents of which are not disclosed by the record, other than that it set up as defense the judgment in Bassett *versus* Thornton, obtained in 1895, and already referred to. Josephine M. Akley, whom we shall hereafter refer to as the respondent, thereupon filed an amendment to the complaint, alleging, in addition to the matters contained in the original pleading, certain facts tending to show that, as to her, the judgment in Bassett *versus* Thornton was wholly null and void, and not binding upon her, in that she was never served with

process in the action, and the court never obtained juris-
diction over her in said cause. She further pleaded facts
purporting to excuse her delay in bringing the action;
also her total lack of knowledge until May, 1917, of said
action of Bassett *versus* Thornton, or of the judgment
rendered therein, or of her interest in the property, or of
any facts connected therewith sufficient to put her upon in-
quiry, or of any facts at all connected with said matters;
also the circumstances under which she then acquired
knowledge thereof and why she did not learn of the same
sooner, and the acts and steps taken by her subsequent
thereto, and the absence of the defendant Bassett from the
state of California. It was further alleged that defendant
Bassett had sold to "innocent purchasers for value" all
of said land except 285.45 acres, and that in so far as such
purchasers were concerned, the plaintiffs were not attempt-
ing to set aside said judgment, and waived, as to them, all
right to the land they had bought. The prayer of the
complaint was amended by requesting that the judgment
in Bassett *versus* Thornton "be set aside and declared
wholly null and void and of no effect whatsoever in so far
as the plaintiff Josephine M. Akley is concerned," and
that the defendant Charles N. Bassett be restrained from
introducing said judgment in evidence against respondent,
or claiming any rights thereunder as against her.

The defendant Bassett, whom we shall hereafter refer
to as the appellant, demurred to the complaint as amended,
specifying as grounds of demurrer a want of sufficient facts,
uncertainty and ambiguity, the bar of certain sections of
the Code of Civil Procedure, and that the laches of
respondent precluded any right of recovery by the action.
The demurrer was overruled and appellant filed his answer.
He denied, among other matters, respondent's alleged owner-
ship in the property and the invalidity of the judgment in
Bassett *versus* Thornton, and set up a number of affirmative
defenses. These are: the conveyance of the property to his
father by deed from Joseph M. Workman and wife, and
the subsequent facts relating to, the history of, and the
judgment in Bassett *versus* Thornton, and the succession of
the land to appellant through his father's estate; title to
the land, as against certain of the plaintiffs other than the
respondent, in O. T. Bassett, through mortgage foreclosure

proceedings, and purchase at such sale by said Bassett, November 11, 1895; claim of title by adverse and exclusive possession, supported by allegations of continuous occupancy, improvement, cultivation, and use of the land, the payment of all taxes, and absence of any claim on the part of the plaintiffs or any of them; estoppel of the plaintiffs, through acquiescence after knowledge of the possession of the land by appellant's father, O. T. Bassett, appellant's succession in interest thereto, and of the sale by him of various parcels of the land, and of extensive and expensive improvements of the same by the Bassetts, and by the purchasers at such sales, without assertion of any right at any time by the plaintiffs; estoppel of the plaintiffs by reason of an agreement entered into in Bassett *versus* Thornton, dismissing the appeal in that action, and the acceptance of the benefits by the parties thereto, including the respondent. The bar of various provisions of the statute of limitations is also pleaded by way of separate defense.

After the trial and submission of the issues thus presented, the court made its findings and conclusions of law. Judgment was entered that appellant is the owner in fee simple absolute of the land in question, and that none of the other parties to the land, including the respondent, have any right, title, interest or estate whatsoever therein. Respondent, Josephine M. Akley, alone, moved the court to vacate and set aside the judgment and to enter another and different judgment, under the provisions and procedure found in sections 663 and 663a of the Code of Civil Procedure. The motion was granted. By its "amended and corrected conclusions of law," another judge sitting in place of the one who tried the case and made the findings, the lower court decided that the respondent and the appellant are tenants in common of the real property involved in the controversy, the former being declared to be the owner in fee simple of an undivided one-ninth interest, and the latter the owner of like title to the remaining eight-ninths of the land. It ordered judgment in partition, and allotment of the several portions of the property, quality and quantity relatively considered, according to the respective rights of respondent and appellant. It also directed judgment in favor of respondent against the appellant in the sum of $109,302, with interest from the date of the commencement

of the action, as respondent's share of the rents, issues and profits derived from the land. The appeal from the order granting respondent's motion, and from the substituted judgment, brings the action of the trial court before us for consideration and review.

[1] While the superior court has jurisdiction on a proper motion made under section 663 of the Code of Civil Procedure, to vacate a judgment as entered, which is inconsistent with, and not supported by the findings of fact, that section merely authorizes the substitution of the judgment that should have been given as a matter of law upon the facts found, and the court cannot, on such motion, change any finding of fact. (*Dahlberg* v. *Girsch*, 157 Cal. 324, 326 [107 Pac. 616] ; *Hole* v. *Takekawa*, 165 Cal. 372, 376 [132 Pac. 445].) Consequently in the determination of this appeal we are restricted to the case made by the findings of fact in the lower court, considered in the light of the pleadings and the issues made thereby. If the first judgment was the correct legal conclusion upon the facts so found, the trial court had no right to vacate it and substitute a different judgment therefor. We are therefore brought to an analysis of the comprehensive and specific findings of the trial court.

[2] As the foundation of her claim to an interest in the property in question, the respondent alleged, and the court found, that she succeeded to, and became the owner of, an undivided two-eighteenths interest in the land on the thirteenth day of March, 1901, upon, and by reason of, the death on that date, of her father, Joseph M. Workman, the grantee under the deed from William Workman. Appellant challenges this position, and asserts that under the rule in Shelley's case the deed, which is set out in full in the findings, should have a construction favorable to him. His contention is that the deed, if delivered before January 1, 1873, vested in Joseph M. Workman a fee simple absolute in the land, his heirs taking no estate or interest in the property during his life, leaving him free to dispose of it to appellant's father, as if the deed contained no words purporting to transfer to him less than the fee. There are two reasons why appellant's contention must fail. The first is that he attempts to place an improper construction upon the language of the deed from William Workman to

plaintiff's father, the material portions of which are as follows:

"The party of the first part, for and in consideration of the natural love and paternal affection by him borne toward the party of the second part, and for the worldly advantage and better maintenance and support of him, the party of the second part, and in provision for the lawful heirs of him, the party of the second part, *hath* given, granted, transferred, assigned and conveyed, and hereby *doth* give, grant, transfer, assign, convey and confirm unto the said party of the second part, *with remainder as hereinafter specified and admitted* the following described parcel of land: . . .

"To have and to hold the above granted and described premises with the appurtenances and the rents, issues and profits thereof *unto* the party of the second part, to and for his use and benefit, *for and during the term of his natural life; and upon the decease of him, the party of the second part, unto his legal heirs,* according to the laws of the state of California respecting descents and distribution, and their heirs and assigns to and for their sole and only use, benefit and behoof, *in fee simple absolute forever; but not* to testamentary heirs and devisees of the party of the second part, in such manner as to contradict, impair, avoid or vary the hereby declared and limited remainder." The words italicized by us were underlined in the original deed.

The fundamental reason for the rule in Shelley's Case is so well stated, and the cases in which the use of apt language has taken deeds out of its application are so concisely reviewed, in *Gordon* v. *Cadwalader*, 164 Cal. 509, 513 [130 Pac. 18], that we refer to the opinion of the present chief justice in that case on this point, and refrain from discussing the subject more at length. We are satisfied that the terms of the instrument remove it from the application of the rule in Shelley's Case, even though it had been delivered prior to January 1, 1873. Its language clearly indicates an intention on the part of the grantor to limit a life estate in Joseph M. Workman, and to vest a full estate in his legal heirs according to the laws of the state of California respecting descents and distribution. (*Montgomery* v. *Sturdivant*, 41 Cal. 290, 298; *Gordon* v. *Cadwalader, supra.*) O. T. Bassett took no greater interest

in the property than his grantor, Joseph M. Workman, had. It follows, therefore, that the deed from Joseph M. Workman to appellant's immediate predecessor did not serve to divest respondent of her future interest in the property, which vested upon the death of her father, on March 13, 1901.

The second answer to appellant's contention is that the rule in Shelley's Case was only in force in this state until January 1, 1873, when it was abolished by section 779 of the Civil Code. (*Gordon* v. *Cadwalader, supra.*) Although the instrument bears date, and was acknowledged, on October 11, 1870, the finding *in this action* is "that delivery of said deed was made to said Joseph M. Workman on the day of its recordation, to wit: March 27, 1873." In Bassett *versus* Thornton, the judgment-roll of which action is embodied in the findings here, the court found that the deed was delivered "prior to the 1st day of January, 1873." Appellant takes the position that the matter of the recordation of the deed was therefore *res adjudicata.* We are not now concerned with the contention, for whether that be so, or not, the instrument, whenever delivered, is not subject to the construction appellant would have us place upon it.

For another reason, however, it is necessary for us to consider the adjudication in Bassett *versus* Thornton, the effect of which was to declare O. T. Bassett the owner in fee simple absolute of the real property, and that the defendants to the action, including the respondent, had no estate or interest therein. Anticipating that the appellant would plead that judgment as a bar to her right to recover in this action, the respondent alleged that as to her, although she was nominally and to all intents a party to the action, the judgment therein was "wholly null and void, and of no force and effect whatsoever, and not binding upon" her, as she was not served with process, and the court never obtained any jurisdiction over her. The facts alleged by her in support of her contention, and found by the trial court to be true, are, briefly, these: On March 1, 1895, said action of Bassett *versus* Thornton was commenced in the superior court of Los Angeles County, respondent, among others, being a defendant. On March 2, 1895, there was delivered to her, in person, a copy of the complaint and summons in said action, but, although she was

at that time but little over twelve years of age, no copy of said summons and complaint were then, or at any time, served upon or delivered to either her father, or mother, or to any guardian of her person or estate, or to any of the persons designated in subdivision 3 of section 411 of the Code of Civil Procedure, which provides the manner in which summons may be served upon a minor under the age of fourteen years residing within the state. None of the persons designated in that section ever appeared in the action of Bassett *versus* Thornton on behalf of respondent or for themselves, and she was not served with process in said action, otherwise than by delivering to her personally a copy of the complaint and summons as before stated. During the pendency of the cause the court made an order purporting to appoint C. K. Holloway as guardian *ad litem* of respondent and two other minor defendants. An answer was thereupon filed in the action by the defendants, the three minors purporting to appear and join therein by their guardian *ad litem*. After evidence introduced, and submission of the cause, the court gave its decision and entered judgment, the effect of which, as already stated, was to declare the plaintiff Bassett the owner in fee of the property, the foundation for the judgment, as shown by the findings in the action, being the delivery of the deed from William Workman to Joseph M. Workman, followed by open, notorious, adverse possession in him for twenty-five years, and his subsequent conveyance to O. T. Bassett, appellant's father.

[3] Although the findings in the judgment-roll of Bassett *versus* Thornton contain a recital that respondent and the other minor defendants in the action "had been duly and regularly served with summons," the trial court in this cause, after finding the facts narrated above, further found, as alleged by the respondent, that the purported service was not sufficient to confer jurisdiction over respondent's person, or jurisdiction to appoint said C. K. Holloway as her guardian *ad litem*. Under the rules applying to the consideration of appeals on the judgment-roll alone, we are bound to accept the findings in the present case as establishing that there was no service of summons upon, or duly authorized appearance in Bassett *versus* Thornton on behalf of this respondent. The fact that the

record contains some evidence bearing upon such finding which is not in itself sufficient to support it cannot be considered. (*Winterburn* v. *Chambers,* 91 Cal. 170, 185 [27 Pac. 658]; *Hill* v. *City Cab etc. Co.,* 79 Cal. 188, 191 [21 Pac. 728]; *Cutting Fruit Packing Co.* v. *Canty,* 141 Cal. 692, 696 [75 Pac. 564].) [4] We dismiss appellant's objection, that respondent may not attack a judgment, regular on its face, by citing the former decisions of this court to the effect that the rule is not that a judgment which is void will be enforced as if it were valid, but that it cannot be shown to be void except in certain ways. But if the parties admit the facts which show that the judgment is void, or if they are established without opposition, then, as a question of law upon such facts, we do not see why the case is not like that where the judgment is void upon its face. (*Hill* v. *City Cab etc. Co., supra; People* v. *Harrison,* 107 Cal. 541, 546 [40 Pac. 956]; *Lake* v. *Bonynge,* 161 Cal. 120, 133 [118 Pac. 535].) [5] In the present case, as in the Hill case, the findings establish the fact that there was no service of summons upon, or authorized appearance by, or in behalf of the respondent. The provision of the code, *supra,* requiring personal service of summons, upon respondent, then under fourteen years of age, and *also* upon her father, mother, guardian, or other person designated by the statute, was mandatory. Without such completed service the court acquired no jurisdiction over her person for any purpose. As such service was not had, the defect was not cured by the appearance of any one of such persons other than the minor, in his or her own behalf. The court had no right in such case to appoint a guardian *ad litem* for respondent, and the acts of such guardian as to her were void and of no effect. (*Gray* v. *Palmer,* 9 Cal. 616, 637–638; *McCloskey* v. *Sweeney,* 66 Cal. 53 [4 Pac. 943]; *Johnston* v. *San Francisco Sav. Union,* 63 Cal. 554, 562; *Redmond* v. *Peterson,* 102 Cal. 595, 599 [41 Am. St. Rep. 204, 36 Pac. 923]; *Chambers* v. *Jones,* 72 Ill. 275, 278; *McMurtry* v. *Fairley,* 194 Mo. 502, 512 [91 S. W. 902]; 30 Cyc. 223.) The judgment in Bassett *versus* Thornton being void as to respondent, the trial court was correct in holding that her interest in the property involved in this action was in no way affected thereby.

The respondent became of legal age January 13, 1901. The death of her father, at which time her remainder interest in the property vested, occurred March 13th of the same year. This action was not commenced until the twenty-fourth day of June, 1918, or more than seventeen years after the disability of nonage was removed, and after the respondent was in position to assert her claim to an interest in the land. In an endeavor to meet the claim of adverse possession, and title by prescription in appellant, and a defense based upon her own laches, respondent alleged, by way of an excuse for such a long period of inactivity, that until about one year before commencing this action, she did not know, nor was she ever informed of any fact that would lead her to suspect that she owned any right, title, interest or estate in the property, and did not know that the judgment in Bassett *versus* Thornton had been entered against her. Other facts purporting to explain the delayed discovery, and setting forth what respondent finally did in the way of initiating this action are pleaded. She also alleged the absence of appellant from the state for the greater portion of the seventeen-year period. These allegations, other than appellant's absence, were traversed by the appellant, who set forth the facts upon which he relied to establish title by prescription in himself, and to show laches on the part of respondent.

[6] In response to the issue of adverse possession the trial-court found that O. T. Bassett, appellant's father, entered upon the land under claim of title founded upon the deed from William Workman to Joseph M. Workman, dated October 11, 1870, the deed from Joseph M. Workman and Josephine M. Workman, his wife, to O. T. Bassett, dated March 11, 1895, and the decree in Bassett *versus* Thornton quieting his title as against respondent and others, and that his successors in interest, including this appellant, entered upon said lands under claim of title deraigned through him. Therefore, as the appellant succeeded to the land under a claim founded on the title of his father, who had a deed which implied full ownership, and under the decree of distribution in the father's estate, his entry and claim rest upon color of title. (*Owsley* v. *Matson*, 156 Cal. 401, 402 [104 Pac. 983].) Section 322 of the Code of Civil Procedure provides that: "When it appears

that the occupant, or those under whom he claims, entered into the possession of property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree, or judgment, or of some part of the property, under such claim, for five years, the property so included is deemed to have been held adversely . . .'' Respondent replies that, as the deed from her father did not convey to appellant's father the remainder interest, to which she succeeded on her father's death, in 1901, and as that right was not affected by the judgment in Bassett *versus* Thornton, she is a tenant in common with appellant to the extent of her interest in the land, and that title by adverse possession may not be obtained by one tenant in common against another. This position is untenable. **[7]** When a tenant in common is in possession of the whole premises, and exercises acts of ownership of an unequivocal character, overt and notorious, and of such nature as, by their own import, to impart information and notice to his cotenants that an adverse possession and disseisin are intended to be asserted against them, his possession is adverse. **[8]** Any act of the cotenant in the exclusive possession which manifests an intention on his part to hold exclusively for himself is equivalent in law to an actual ouster. (1 Cal. Jur. 544; *Feliz* v. *Feliz*, 105 Cal. 1, 5 [38 Pac. 521].) **[9]** A tenant in common who enters into the actual possession of land under claim and color of title, and who, with his predecessor in interest, has maintained possession, and exercised acts of ownership openly and notoriously, claiming the same adversely to other cotenants who are of age, and to all the world, and paying taxes assessed thereon for more than five years prior to the commencement of an action against him, thereby acquires a title by prescription under the statute of limitations. (*Gregory* v. *Gregory*, 102 Cal. 50, 53 [36 Pac. 364]; *Winterburn* v. *Chambers*, 91 Cal. 170, 184 [27 Pac. 658]; Freeman on Cotenancy and Partition, sec. 221.) **[10]** The rule is that when one enters avowedly as tenant in common with others, his possession is the possession of the others, so long as the ten-

ancy in common is not disclaimed. In such cases to constitute the ouster there must be acts of the most open and notorious character, clearly giving notice to the world, and to all having occasion to observe the condition and occupancy of the property, that the intention is to exclude, and does exclude the cotenant. The rule thus stated, however, has no application to a case where the possession of the person in question was neither avowedly begun as a tenant in common, nor instituted under a deed or instrument which defined his title as such. (*Bath* v. *Valdez*, 70 Cal. 350, 358 [11 Pac. 724]; *Frick* v. *Sinon*, 75 Cal. 337, 339 [17 Pac. 439]; *Elder* v. *McClaskey*, 70 Fed. 529, 538–540 [17 C. C. A. 251].) **[11]** In this case appellant's father, his predecessor in title, entered into the open and notorious possession of the entire tract under a deed which purported to convey the whole, and the entire interest in the whole, of the property in fee simple, and maintained his interest thereunder. Appellant, in turn, went into possession, and at the time Joseph M. Workman, the life tenant, died, and the right of respondent accrued, he was maintaining possession, under the decree of distribution in his father's estate, which likewise by its terms purported to vest in him the whole estate, and title in and to the whole property. The entry by appellant's predecessor was the assertion of an exclusive right in severalty, and equivalent to an express declaration that he entered "claiming the whole to himself." The entry and possession, which passed to appellant, was an ouster of all persons claiming an interest in the land, and was such a disseisin as set the statute of prescription in motion against them, at and from the time they had a right of entry. (*Frick* v. *Sinon, supra.*) It is immaterial that the fee-simple deed from Joseph M. Workman to O. T. Bassett, under which the entry was made, actually carried·with it only the title to a life estate, or an undivided interest. The extent of the estate purporting to be conveyed characterized the entry and subsequent possession, and showed beyond doubt that they were made under a claim to the whole, and were with the intent to oust all others asserting an interest. (*Bath* v. *Valdez, supra.*) It would seem, therefore, that appellant's possession was never in privity with respondent, as her tenant in common, or in subordina-

tion of her claim. (*Elder* v. *McClaskey*, 70 Fed. 529, 539–542 [17 C. C. A. 251].)

Respondent takes the position that neither the possession, nor the acts of appellant or his immediate predecessor, before the death of her father in 1901, at which time her rights accrued, should have the effect of ousting her. It is true that the possession of respondent's father, the tenant for life, was not adverse to her as remainderman. [12] Such life tenant could not, by his dealings with the life estate, make his, or his grantee's possession, adverse to respondent, so as to start the statute of limitations against her during the life estate (*Pryor* v. *Winter*, 147 Cal. 554, 559 [109 Am. St. Rep. 162, 82 Pac. 202]; *McMurtry* v. *Fairley*, 194 Mo. 502, 510 [91 S. W. 902]), but, after such life estate terminated, the possession, unless in some way qualified, did become adverse and the statute of limitations began to run at that time. (*Mann* v. *Mann*, 141 Cal. 326, 330 [74 Pac. 995].) Consequently the facts pertaining to the prior occupation and possession are material elements in determining the question, now presented, whether the possession of the appellant was adverse after the life tenant died. There was no change in the claim, or character of the possession after the life estate fell in. It continued as before, and we can only know its nature by reference to the circumstances under which it began and was perpetuated. Therefore the deed from Workman to Bassett, and the decree of distribution in the latter's estate, prior to the falling of the life estate are of first importance in showing whether the possession taken under them was intended to be, and was in fact, adverse when continued after the time at which respondent's right of entry accrued. "There can be no doubt of the correctness of this view, on principle, and the authorities fully support it." (Taft, J., in *Elder* v. *McClaskey, supra*, 539.)

[13] The fact that the respondent did not become of age until January 13, 1901, does not make any difference in the consideration of the question before us. An infant can be ousted from his possession either by a stranger or a cotenant. The ouster sets the statute of limitations running in favor of the disseisor, but protection is given the infant by the provision of the statute that the adverse

holding must continue from that date until the expiration of five years from his attaining his majority. The sufficiency of the notice on the part of the disseisor, at the time it is given, is not to be diminished by anything occurring subsequent thereto. The knowledge that the infant would have had from the notice, if he had been capable of comprehending the same, is imputed to him as of the date of the notice as fully as if he were an adult, but the effect of such knowledge is suspended until his majority. (*Winterburn* v. *Chambers, supra.*)

What the appellant, and his predecessor in title, did by way of entering upon, and maintaining possession of the land, and in asserting complete and exclusive ownership, both before and after respondent's right of entry accrued in 1901, is comprehensively set forth in the trial court's findings, the substance of which we recited when stating the various separate defenses pleaded by appellant. We think it unnecessary to repeat those facts here, or to quote extensively from the findings. As an ultimate fact the court found that such ouster by, and possession in, appellant, and his predecessors in title, extending over a period of nearly twenty-five years, seventeen of which passed after the respondent was in position to assert her claim to an interest in the property, imparted constructive notice and knowledge to the respondent, and her coplaintiffs, of the adverse nature of appellant's claim. It also found that neither respondent, nor any of the other parties hereto, other than appellant, had been, or were seised, or possessed, of the land within five years before the commencement of the action. Its conclusion first adopted was that, by reason of the facts so found, and of such occupancy and possession by the appellant, all of said claimants, other than appellant, are barred from any recovery in this action, and that the appellant "has acquired title to said real property under the provisions of section 1007, Civil Code." If that conclusion is not deprived of support by other facts found, the possession and occupancy of appellant, continued for a period far exceeding the statutory period of five years, was, undoubtedly, not only sufficient to bar respondent, and those who like her asserted some legal title, but it was also sufficient to vest a title in fee simple in appellant against all other claimants. (Civ. Code,

sec. 1007; *Owsley* v. *Matson,* 156 Cal. 401, 404 [104 Pac. 983]; *Wutchumna Water Co.* v. *Ragle,* 148 Cal. 759, 764 [84 Pac. 162]; *Woodward* v. *Faris,* 109 Cal. 12, 18 [41 Pac. 781].)

Respondent points out other findings, which she contends, are inconsistent with and entirely destroy the effect of the finding of prescriptive title in appellant. The first of these is that appellant is a resident of the state of Texas, and during the whole period of time since respondent's rights accrued, has only been in the state of California on infrequent visits, remaining here in the aggregate some three and a half years, and has never designated an agent in the state upon whom summons may be served. Other findings are that "this action is not barred by the provisions of section 318 of the Code of Civil Procedure," and that specific allegations of the answer, wherein appellant pleaded the bar of other sections of the statute of limitations, including section 319 of the Code of Civil Procedure, as a defense to respondent's cause of action, are untrue. [14] It is the law in this state that the statute of limitations may be resorted to in an action of partition so far as it establishes an interest in the property. And this is in no way inconsistent with the general rule that the action for partition between tenants in common is not barred by the lapse of time. (*Adams* v. *Hopkins,* 144 Cal. 19, 28 [77 Pac. 712].) [15] The only provisions of the code that seem to have any application to this phase of the case are sections 318 and 319 of the Code of Civil Procedure and section 1007 of the Civil Code. The two former prescribe seizin within a period of five years before the commencement of the action as a necessary condition of the right to maintain the same. They affect only the remedy, i. e., the action, or means given by the law for the recovery of a right, but not the right itself. On the other hand, section 1007 of the Civil Code, pertaining to the acquisition of title by prescription, which is correlated with and must be construed with the sections of the Code of Civil Procedure relating to adverse possession (*Peoples Water Co.* v. *Anderson,* 170 Cal. 683, 684 [151 Pac. 127]), confers a substantive right. (*Billings* v. *Hall,* 7 Cal. 1, 4; *Alhambra etc. Water Co.* v. *Richardson,* 72 Cal. 598, 600 [14 Pac. 379]; *Adams* v. *Hopkins,* 144 Cal. 19, 27 [77 Pac. 712].) [16] Respondent and those claiming with her

had five years after their rights in the property accrued within which to bring an action, either for the recovery of the land or possession thereof, or for the rents and profits out of the same (Code Civ. Proc., secs. 318, 319, 328; *Winterburn* v. *Chambers, supra*), and that period was extended by the time the defendant was out of the state. (Code Civ. Proc., sec. 351; *San Diego Realty Co.* v. *Hill,* 168 Cal. 637, 639 [143 Pac. 1021]; *Foster* v. *Butler,* 164 Cal. 623, 628 [130 Pac. 6].) But the defendant's absence from the state did not deprive the respondent and the others of a remedy. They might have invoked the authority of the court, and, upon service of process by publication in the manner prescribed by the statute, brought an action to determine the adverse claims to the property (*Perkins* v. *Wakeham,* 86 Cal. 580 [21 Am. St. Rep. 67, 25 Pac. 51]; *Arndt* v. *Griggs,* 134 U. S. 316 [33 L. Ed. 918, 10 Sup. Ct. Rep. 557, see, also, Rose's U. S. Notes]), or to partition the real estate, as was finally done by the bringing of this action. (*Pennoyer* v. *Neff,* 95 U. S. 714, 727, 738 [24 L. Ed. 565]; *Seculovich* v. *Morton,* 101 Cal. 673, 677 [40 Am. St. Rep. 106, 36 Pac. 387].) Section 757 of the Code of Civil Procedure, relating to suits in partition, expressly provides that summons in such actions may be served on nonresident parties, as in other cases. Respondent and the others were in position immediately upon the death of their ancestor, in 1901, to institute the action. They permitted the years to slip by at the peril of being caught in the exact position in which they are now placed by the findings of the trial court. In order to maintain the action, which, by reason of the other facts, they were permitted to commence, it was incumbent upon them to show that they or their ancestor had been seised, or possessed of the property or premises in question, within five years before the commencement of the action. (Code Civ. Proc., secs. 318, 319; *Cannon* v. *Stockmon,* 36 Cal. 535, 540 [95 Am. Dec. 205]; *Adams* v. *Hopkins, supra.*) They were not so seised or possessed, and when such facts appeared at the trial the inevitable finding resulted that they were "barred from any recovery of the real property, the subject of the action," because, as the court also found, the title had in the meantime passed to the appellant by prescription under section 1007 of the Civil Code.

[17]   For another reason we think the first judgment entered in the court below was right.   The trial court found that the respondent did not make her demand within a reasonable time and that, as a consequence, her cause of action was barred by her laches.   This determination is unquestionably correct.   The commencement of this action after such a lapse of time, irrespective of the statute of limitations, is, in our judgment, the presentation of a stale demand. (*Casserly* v. *County of Alameda,* 153 Cal. 170, 173 [94 Pac. 765].)   [18]   In this state a suit in partition under our code is, in its nature and essence, equitable.   The action, though regulated to a great extent by the statute, partakes more fully, both in respect to the remedies provided and the mode of procedure, of the principles and rules of equity than those of law.   (*Gates* v. *Salmon,* 35 Cal. 576, 585, 593 [95 Am. Dec. 139]; *Goodale* v. *Fifteenth District Court,* 56 Cal. 26, 29; *Emeric* v. *Alvarado,* 64 Cal. 529, 619 [2 Pac. 418]; *Emeric* v. *Alvarado,* 90 Cal. 444, 456 [27 Pac. 356]; *Woodward* v. *Superior Court,* 95 Cal. 272, 276 [30 Pac. 535].)   [19]   It devolves on one seeking the aid of a court of equity, where the complaint discloses a great lapse of time without the assertion of any claim, and after long-continued acquiescence in acts hostile to the claim, to show the circumstances indicating good faith and reasonable diligence on his part.   (*Kleinclaus* v. *Dutard,* 147 Cal. 245, 250 [81 Pac. 516]; *Cahill* v. *Superior Court,* 145 Cal. 42, 46 [78 Pac. 467]; *Gregory* v. *Gregory,* 102 Cal. 50, 53 [36 Pac. 364]; *Unger* v. *Mooney,* 63 Cal. 586, 596 [49 Am. Rep. 100].)   The respondent failed to establish a sufficient equitable reason why she waited so long before asserting a claim to an interest in the land.   The trial court found her specific allegations in support of her contention in that behalf to be untrue, and that there was no justification for the long delay in bringing this action.   The only inference that can be drawn from the findings is that the respondent had sufficient knowledge and information, both as to the deed executed by William Workman to her father and of the action of *Bassett* v. *Thornton,* to fully comprehend and understand her own rights in the matter, long prior to the time set by her, and that if she did not have that understanding she did have information sufficient to put her, as a person of ordinary prudence, on inquiry as to her interest in the prop-

erty. The trial court therefore reached the only possible conclusion that the plaintiffs in the action, including this respondent and the defendant, Ida Kelso, are precluded by the application of the doctrine of laches from any recovery. (*Chapman* v. *Bank of California*, 97 Cal. 155, 159 [31 Pac. 896]; *Seculovich* v. *Morton, supra.*) [20] A party is not to be held barred from his remedy for a wrong alleged to have been done to him, on the ground that he has been guilty of laches, unless his delay in bringing action has been of such length and under such circumstances that it would be inequitable to enter into an inquiry as to the validity of his claim or to allow such remedy. Whether such is the situation is a question in the first instance for the trial court, and if its conclusion thereon can reasonably be held to find sufficient support in the evidence, an appellate court should not interfere therewith. (*Suhr* v. *Lauterbach*, 164 Cal. 591, 593 [130 Pac. 2].) The specific facts found in this case are ample, in our judgment, to support the further finding by the trial court that the long delay on the part of the respondent in initiating the action was prejudicial to the appellant.

[21] Respondent has urged that the defense of laches should not be recognized in this case for the reason that the defense was not pleaded. In answer it is only necessary to say that "it is well settled that the defense of laches need not be pleaded, but when it appears from the evidence that the seeker of relief in equity has been guilty of laches the court will deny such relief *sua sponte.*" (*Stevinson* v. *San Joaquin etc. Co.*, 162 Cal. 141, 143 [121 Pac. 398].)

Appellant seeks also to invoke the defense of estoppel against respondent, in that he alleged, and the court found, that after respondent became of age she received and accepted her share of certain proceeds arising out of an agreement of settlement and dismissal of an appeal taken in the case of *Bassett* v. *Thornton*. The finding on the point is so unsatisfactory on the essential elements entering into the application of the doctrine of estoppel that we may well consider the contention to be without support.

From the foregoing it must appear that the judgment and decree first entered by the trial court, to the effect that the plaintiffs in this action, including respondent, have not, and defendant, Ida Kelso, has not, nor has either or any of the

plaintiffs, or said Ida Kelso, any right, title or interest in the land and premises eventually concerned in the litigation, but that the appellant is the owner in fee simple of all of such property, was right and was the only judgment and decree that can properly stand on the findings and proper conclusions of law. The lower court was in error when it granted the motion of the respondent to vacate and set it aside and to substitute the judgment finally entered in its place and stead.

[22] As an order reversing the order and judgment appealed from, without other direction, will leave the original °conclusion of law and judgment in force, it is not necessary to make any order directing a new conclusion of law or the entry of another judgment. (*Dahlberg* v. *Girsch*, 157 Cal. 324, 332 [107 Pac. 616].)

The order vacating the original judgment and amending the conclusion of law upon which the same was based is reversed, as is the judgment entered in pursuance of said order.

Shaw, C. J., Wilbur, J., Lennon, J., Richards, J., *pro tem.*, Myers, J., *pro tem.*, and Lawlor, J., concurred.

Rehearing denied.

All the Justices present concurred.

Richards, J., *pro tem.*, was acting.